682 A.2d 334

**Tharone CHANTHAVONG a/k/a Kenny Chanthavong, Appellant,**

**v.**

**Tuan Q. TRAN, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1996.

Filed Aug. 14, 1996.

Marc F. Greenfield, Philadelphia, for appellant.

Michael J. Willner, Philadelphia, for appellee.

Before KELLY, POPOVICH and MONTEMURO,* JJ.

KELLY, Judge.

In this appeal we are asked to determine whether the trial court properly limited certain expert testimony and correctly instructed the jury regarding serious injury for purposes of the limited tort alternative under the Motor Vehicle Financial Responsibility Law. Based upon the reasoning set forth below, we hold that the trial court erroneously limited the expert testimony and improperly instructed the jury so as to warrant a new trial. Accordingly, we reverse and remand for proceedings consistent with this opinion.

The relevant factual and procedural history of this appeal is as follows. On January 28, 1993, at approximately 7:30 a.m., appellee collided with the rear of appellant's vehicle. As a result of the accident, appellant was treated by his family doctor for severe back pain, and consequently missed two months of work. Appellant filed a complaint in the Court of Common Pleas of Philadelphia County on August 18, 1993. The case went to trial before the Honorable Albert F. Sabo on October 11, 1994.

On the morning of trial, the parties stipulated to liability. Appellant had chosen the limited tort option of his insurance policy; therefore, the only issue for the jury was whether appellant sustained a "serious injury," entitling him to noneconomic damages. In order to establish that he had suffered a serious injury, appellant testified that his injury prevented him from participating in everyday activities. Additionally, appellant offered his family physician, Dr. Robert Bell, as an expert general practitioner. Dr. Bell testified that after reviewing a CAT scan report prepared by the radiologist, Dr. Brian J. Young, he concluded that appellant sustained a central disc herniation as a result of the accident. The trial

* Retired Justice assigned to the Superior Court.

court, however, precluded Dr. Bell from answering the following questions posed by appellant's counsel:

> Q. Now based upon your report that you received in Mr. Chanthavong's case, what kind of situation were his disks in at L4–L5?

(N.T. 10/12/94 at 110).

> Q. Okay. Did you come to a conclusion to a reasonable degree of medical certainty that treatment would be required after you received that CAT scan report?

(*Id.* at 161). The trial court found that Dr. Bell was not qualified to express an expert opinion as to these questions.

Additionally, appellant offered Dr. Young as an expert radiologist. Dr. Young also testified that a CAT scan performed on appellant revealed that he had suffered a central disk herniation. The trial court, however, did not allow Dr. Young to answer any questions regarding the type of pain and suffering experienced by a person who has sustained a herniated disc. The trial court precluded this testimony because it believed an orthopedist or neurologist would have been more qualified to offer an expert opinion as to this issue. (Trial Court Opinion at 8). The trial court also found that this line of questioning was beyond the scope of Dr. Young's report, and therefore properly excluded. (*Id.* at 8).

During closing arguments, appellant's counsel offered the following:

> How do we determine what pain and suffering and loss of life's pleasures are worth? What I would suggest you do is you take into consideration what one day of pain is, what one day of loss of life's pleasures is, and you figure out in your mind how much is that pain, how many dollars is that worth?

(N.T. 10/13/94 at 59–60). Thereafter, the trial court sustained defense counsel's objection that this was an improper argument. The trial court found that it was improper for counsel to instruct the jury on how to compute damages. Moreover, the trial court stated:

The issue of damages was not at issue in this case. Plaintiff elected limited tort which precluded him from recovering non-economic damages to the extent that a serious injury did not exist. The jury in this case decided Plaintiff had not suffered a serious injury. Therefore, he was not prejudiced because damages were not in issue.

(Trial Court Opinion at 9).

At the close of trial, the trial court instructed the jury, over appellant's objections, that "the law does not recognize soft tissue injury as a serious injury." (N.T. 10/17/94 at 15). Subsequently, the jury returned a verdict in favor of appellee. The trial court denied appellant's motion for a new trial, and this timely appeal followed.

Appellant raises the following issues for our review:

1. DID THE TRIAL JUDGE ERR IN LIMITING AND PROHIBITING CERTAIN TESTIMONY OF THE PLAINTIFF'S MEDICAL EXPERT, DR. ROBERT BELL, BASED ON HIS ALLEGED LACK OF QUALIFICATIONS?

2. DID THE TRIAL JUDGE ERR IN LIMITING AND PROHIBITING CERTAIN TESTIMONY OF THE PLAINTIFF'S MEDICAL EXPERT, DR. BRIAN J. YOUNG, BASED ON HIS TESTIMONY BEING BEYOND THE SCOPE OF HIS REPORT AND ON HIS ALLEGED LACK OF QUALIFICATIONS?

3. DID THE TRIAL JUDGE ERR IN LIMITING PLAINTIFF'S COUNSEL'S CLOSING ARGUMENT?

4. DID THE TRIAL JUDGE ERR IN HIS CHARGE TO THE JURY REGARDING "SERIOUS INJURY"?

(Appellant's Brief at 4).

▮ At the outset, we note that our standard for reviewing the trial court's denial of a motion for a new trial is limited.

The Superior Court's standard for reviewing the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably abused its discretion or commit-

ted an error of law which affected the outcome of the case. *Melso v. Sun Pipe Line Co.*, 394 Pa.Super. 578, 576 A.2d 999 (1990), *appeal denied*, 527 Pa. 667, 593 A.2d 842 (1991); *Cooper v. Burns*, 376 Pa.Super. 276, 545 A.2d 935 (1988), *appeal denied*, 522 Pa. 619, 563 A.2d 888 (1989). We will reverse the trial court's denial of a new trial only where there is a clear abuse of discretion or an error of law which controlled the outcome of the case. *Vignoli v. Standard Motor Freight, Inc.*, 418 Pa. 214, 210 A.2d 271 (1965); *Cashdollar v. Mercy Hospital of Pittsburgh*, 406 Pa.Super. 606, 595 A.2d 70 (1991). The trial court abuses its discretion when it misapplies the law or when it reaches a manifestly unreasonable, biased or prejudiced result. *Girard Trust Bank v. Remick*, 215 Pa.Super. 375, 258 A.2d 882 (1969).

*Whyte v. Robinson*, 421 Pa.Super. 33, 37, 617 A.2d 380, 382 (1992). We begin our analysis by addressing appellant's first and second issues raised on appeal.

## I. *Expert Testimony of Drs. Bell and Young*

In his first and second issues on appeal, appellant maintains that Judge Sabo erred in precluding the proffered expert testimony of Drs. Bell and Young. Appellant contends that both doctors possessed the necessary qualifications and experience to offer their expert opinions to the questions posed by appellant's counsel. Furthermore, appellant contends that Dr. Young's proffered testimony regarding the implications of a herniated disc were not beyond the scope of his report. We agree.

### A. *Qualifications of Drs. Bell and Young*

■ The law regarding the qualifications of expert witnesses is well settled.

It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he

does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. *Commonwealth v. Gonzalez*, 519 Pa. 116, 128, 546 A.2d 26, 31 (1988); *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Moodie v. Westinghouse Electric Corp.*, 367 Pa. 493, 501, 80 A.2d 734, 738 (1951). It is also well established that a witness may be qualified to render an expert opinion based on training and experience. *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 598, 437 A.2d 1198, 1202 (1981) (plurality opinion). Formal education on the subject matter of the testimony is not required, *see Reardon v. Meehan*, 424 Pa. 460, 464, 227 A.2d 667, 670 (1967); *Churbuck v. Union Railroad Company*, 380 Pa. 181, 110 A.2d 210 (1955); *McDaniel v. Merck, Sharp & Dohme*, 367 Pa.Super. 600, 608, 533 A.2d 436, 440 (1987), *allocatur denied*, 520 Pa. 589, 551 A.2d 215 (1988); *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985); *Commonwealth v. Daniels*, 280 Pa.Super. 278, 286–87, 421 A.2d 721, 726 (1980).

*Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 480–81, 664 A.2d 525, 528 (1995). Moreover, experts in one area of medicine may be found to be qualified to address other areas of specialization where the specialties overlap in practice, or where the specialist has had experience in a selected field of medicine. *Estate of Pew*, 409 Pa.Super. 417, 424, 598 A.2d 65, 69 (1991), *allocatur denied*, 530 Pa. 645, 607 A.2d 255 (1992) (citing *Lira v. Albert Einstein Medical Center*, 384 Pa.Super. 503, 559 A.2d 550 (1989), *allocatur denied*, 527 Pa. 635, 592 A.2d 1302 (1990)).

Instantly, the trial court precluded Dr. Bell from testifying as to the condition of appellant's spine and the subsequent treatment necessary to treat his injury. The trial court found that Dr. Bell did not possess the necessary qualifications to offer his expert opinion on these matters.

█ At the time of trial, Dr. Bell was a board-certified general practitioner. (N.T. 10/12/94 at 57). He had been practicing medicine for over sixteen years, and approximately twenty-five percent of his practice had consisted of personal

injury. (*Id.* at 57–59). Furthermore, in the course of his practice, Dr. Bell regularly received CAT scan reports and used them in the course and scope of his treatment of patients. (*Id.* at 92).

Due to Dr. Bell's training and experience, we conclude that he had a "reasonable pretension to specialized knowledge" in the use of CAT scan reports to diagnose and treat patients. The combination of his training and experience with patients who have sustained personal injuries, qualified him to aid the jury in its deliberations. *See Miller v. Brass Rail Tavern, Inc., supra; Estate of Pew, supra.*

The trial court also prohibited Dr. Young from offering expert testimony on the type of pain and suffering caused by a herniated disc. In the trial court opinion, Judge Sabo stated that "this court disallowed testimony only where an orthopedist or neurologist would have been more qualified to testify on the causation of herniated discs." (Trial Court Opinion at 8).

At the time of trial, Dr. Young was a board-certified radiologist. (N.T. 10/12/94 at 173). In addition, he had acquired a sub-specialty in neuroradiology by completing a two-year neuroradiology fellowship at the University of Pennsylvania Hospital. (*Id.* at 173–74). He was also a senior member of the American Society of Neuroradiology. (*Id.* at 174). In addition, Dr. Young had taught neuroradiology at the Medical College of Pennsylvania and the Philadelphia College of Osteopathic Medicine. (*Id.*).

It is our determination that Dr. Young had the necessary knowledge of the pain associated with a herniated disc in order to qualify him as an expert on this subject. The fact that an orthopedist or neurologist would have been more qualified to offer an expert opinion on the pain caused by a herniated disc, did not warrant exclusion of Dr. Young's testimony on the subject. *See Taylor v. Spencer Hospital,* 222 Pa.Super. 17, 24 n. 2, 292 A.2d 449, 453 n. 2 (1972) (explaining that witnesses having "any reasonable pretension to specialized knowledge on a given subject should be allowed to testify

as expert witnesses even though they are not the 'best possible witnesses' available"). Hence, we conclude that the trial court's exclusion of Dr. Young's proffered testimony on the implications of a herniated disc constituted an abuse of discretion.

### B. *Scope of Dr. Young's Report*

The trial court also excluded Dr. Young's testimony regarding the pain associated with a herniated disc because it found this testimony was beyond the scope of his report. We disagree.

This Court has recently set forth the applicable law regarding the scope in which an expert witness may testify as to his or her pretrial report as follows:

> "[E]xperts may testify at trial concerning matters which are within the fair scope of a pretrial report." *Pascale v. Hechinger Company of Pennsylvania,* 426 Pa.Super. 426, 435, 627 A.2d 750, 754 (1993) (citations omitted). "The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report." *Id.* (citation omitted).

In *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.,* 348 Pa.Super. 285, 502 A.2d 210 (1985), the Superior Court noted that

> it is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify" is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. *See Augustine v. Delgado,* 332 Pa.Super. [194] at

199, 481 A.2d [319] at 321 [ (1984) ] ("Pa.R.Civ.P. 4003.5 favors liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise"); *Martin v. Johns–Manville Corp.,* 322 Pa.Super. [348] at 358, 469 A.2d [655] at 659 [ (1983) ] ("[W]e have found experts' reports to be adequate . . . when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness.")

In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." *The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.*

*Id.,* 348 Pa.Super. at 290, 502 A.2d at 212–213.

*Walsh v. Kubiak,* 443 Pa.Super. 284, 291–92, 661 A.2d 416, 420 (1995), *allocatur denied,* 543 Pa. 716, 672 A.2d 309 (1996) (emphasis supplied). *Accord Greer v. Bryant,* 423 Pa.Super. 608, 615, 621 A.2d 999, 1003 (1993).

 Instantly, appellee received a copy of Dr. Young's pretrial report which stated that appellant had sustained a herniated disc. Appellee was also aware that the only issue at trial was whether appellant had suffered a "serious injury" as a result of the accident. Thus, it naturally followed that appellant would attempt to establish not only the fact that he had sustained an injury, but also the effects thereof. We cannot see how Dr. Young's testimony would have surprised appellee or prevented him from preparing a meaningful response. Thus, we conclude that the trial court abused its discretion by prohibiting Dr. Young's proffered testimony under a theory that it was beyond the scope of his report.

 Based upon the foregoing, we conclude that the exclusion of the proffered testimony of Drs. Bell and Young constituted harmful, prejudicial, and reversible error necessitating

reversal and remand for a new trial as to whether the accident caused appellant to sustain a "serious injury," entitling him to an award of non-economic damages.

## II. *Jury Instructions*

We turn now to appellant's fourth issue on appeal challenging the validity of the trial court's instructions to the jury. Our standard for reviewing the trial court's jury instructions is governed by the following principles:

> In determining whether to reverse a jury verdict due to an erroneous jury charge, an appellate court must look at the jury charge as a whole; if the charge inaccurately describes the law, there is error. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Schecter v. Watkins*, 395 Pa.Super. 363, 374–75, 577 A.2d 585, 590–91, *appeal denied*, 526 Pa. 638, 584 A.2d 320 (1990). However, error alone does not mandate a new trial. To constitute reversible error, a jury instruction must not only be erroneous, but must also be harmful to the complaining party. *Jistarri v. Nappi*, 378 Pa.Super. 583, 588, 549 A.2d 210, 213 (1988); *Mickey v. Ayers*, 336 Pa.Super. 512, 514–15, 485 A.2d 1199, 1202 (1984).

*Summit Fasteners Inc. v. Harleysville National Bank & Trust Co., Inc.*, 410 Pa.Super. 56, 62, 599 A.2d 203, 206 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992). Moreover, if the jury instruction is fundamentally in error and may have been responsible for the verdict, a new trial is warranted. *Mt. Lebanon School District v. W.R. Grace and Company*, 414 Pa.Super. 455, 468, 607 A.2d 756, 762 (1992), *appeal dismissed*, 534 Pa. 265, 631 A.2d 596 (1993).

Appellant contends that the trial court erred by instructing the jury as follows:

> Only non-economic losses, often referred to as pain and suffering, and any related loss to this pain and suffering, are recoverable if you find the Plaintiff has proven by a preponderance of the evidence that he has suffered a serious impairment of a body function which was caused by the accident of January the 28th of 1993. *The law does not recognize soft tissue injury as a serious injury.* In deter-

mining whether the impairment of a body function was serious, you should consider such factors as the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, competent medical testimony supporting the claimed impairment, any other relevant factors dealing with the cause of the alleged injury.

(N.T. 10/17/94 at 15–16) (emphasis added). Appellant asserts that Pennsylvania law recognizes that soft tissue injuries can constitute a "serious injury" warranting an award of noneconomic damages. Furthermore, appellant maintains that the aforementioned instruction prejudiced him by directing a verdict in favor of appellee. We agree.

The Pennsylvania Motor Vehicle Financial Responsibility Law provides in pertinent part:

Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to the applicable tort law. *Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss....*

75 Pa.C.S.A. § 1705(d). The Pennsylvania Legislature has defined serious injury as "a personal injury resulting in death, serious impairment of a bodily function, or permanent disfigurement." 75 Pa.C.S.A. § 1702.

▇▇▇▇ The aforementioned language was modeled after Michigan law. Thus, this Court has adopted several factors set forth by Michigan case law in order to determine if a person has sustained "serious impairment of a bodily function." This Court has stated:

The "serious impairment of body function" threshold contains two inquiries:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

b) Was the impairment of body function serious? The focus of these inquires is not on the injuries themselves, but on

how the injuries affected a particular body function. Generally, a medical testimony will be needed to establish the existence, extent, and permanency of the impairment ... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

*Dodson v. Elvey,* 445 Pa.Super. 479, 499, 665 A.2d 1223, 1233–34 (1995), *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996) (citing *DiFranco v. Pickard,* 427 Mich. 32, 39, 398 N.W.2d 896, 901 (1986)). *Accord Murray v. McCann,* 442 Pa.Super. 30, 36, 658 A.2d 404, 407 (1995) (citing same). Furthermore, this Court has recently recognized that a soft tissue injury can constitute a "serious injury" where it is objectively manifested and substantially impairs body function. *Dodson v. Elvey, supra* at 501, 665 A.2d at 1233.[1] Hence, we must conclude that the trial court erred by instructing the jury that a soft tissue injury can never constitute a serious injury.[2]

Despite the trial court's erroneous charge, appellee contends that the instructions, taken as a whole, accurately set forth the applicable law. Furthermore, appellee asserts that the erroneous instruction did not prejudice appellant, making a new trial unwarranted. We disagree.

In support of his argument, appellee relies on *Murray v. McCann, supra.* In *Murray,* this Court upheld the trial

---

**1.** We note that at the time the trial court instructed the jury, it was without the benefit of the abovementioned Superior Court decisions stating that a soft tissue injury can constitute a "serious injury" under 75 Pa.C.S.A. § 1705(d).

**2.** Appellant also asserts that the trial court erred by instructing the jury that:

The phrase serious impairment of body function must be considered in conjunction with death and permanent, serious disfigurement. The legislature did not intend to erect two significant obstacles to a tort action for non-economic loss and one quite insignificant one. (N.T. 10/17/94 at 16). Although this instruction does not constitute an error of law per se, when viewed in the context of the entire instruction, we conclude that the instruction unduly prejudiced appellant, warranting a new trial.

court's denial of a motion for new trial despite isolated wording in the trial court's opinion which stated "a soft tissue injury never could qualify as a serious impairment of bodily functions." *Id.* at 35, 658 A.2d at 406. The *Murray* Court held that although these isolated remarks in the trial court's opinion represented an error of law, the trial court applied the proper legal standard in finding that the appellant in that case did not suffer a "serious injury." *Id.* at 38, 658 A.2d at 407. The Court stated:

In determining the correct definition for the term at issue, the trial court properly turned to guidance from Michigan's body of case law. The court cited to the leading Michigan case, *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896, 914–15 (1986), and concluded that "the factors" which should be utilized in determining whether a bodily impairment is serious are "the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, [and] the treatment required to correct the impairment." In addition, any other relevant factor may be utilized under the *DiFranco* decision.

The trial court also examined the evidence and analyzed how appellant's injuries interfered with her life. In addition, the trial court reviewed the extent of appellant's impairment, noting that she performs all normal daily activities. It further determined that no particular body function was impaired due to the fact that appellant did do all her normal activities but did so with minor aches and pains. Moreover, the trial court considered the amount of medical treatment sought by appellant and observed the following. When Dr. Chidester, the last physician to treat appellant, examined appellant, she had full range of motion of the neck and no low back pain. The trial court noted that appellant participates in everyday activities, albeit with stiffness, and that appellant herself testified that she is able to touch her toes and has full range of motion in her neck. In addition, the trial court observed that appellant never wore a neck or back brace and the only medication she took was ibuprofen. Furthermore, the trial court observed that appellant never was hospitalized, physical therapy was completed after four

months, and thereafter appellant had one additional doctor visit eight months after the accident. Finally, it credited Dr. Willner's opinion that the slight limitations on appellant's activities would not be permanent. Trial court opinion, 6/22/94, at 6. In other words, the court examined the evidence on each of the four factors outlined in *DiFranco*. *Id.* at 38, 658 A.2d at 407.

The instant case is distinguishable from *Murray* in that here a jury sat as the trier of fact. Unlike the *Murray* Court, we are without the benefit of an opinion explaining how the jury decided that appellant had not sustained a serious injury. Additionally, in the case *sub judice*, appellant allegedly suffered a soft tissue injury objectively manifested in the form of a central disc herniation. Unlike the appellant in *Murray*, appellant was unable to participate in everyday activities as a result of this injury. Furthermore, the improperly precluded testimony of appellant's medical experts would have established that future medical attention was necessary to treat appellant's injuries.

At trial, it was undisputed that the only injury allegedly sustained by appellant was a soft tissue injury. Thus, the only issues for the jury were (1) whether appellant in fact sustained a soft tissue injury and (2) whether it constituted a "serious impairment of bodily function," entitling appellant to an award of non-economic damages. By instructing the jury that "the law does not recognize soft tissue injury as a serious injury," the trial judge essentially resolved both issues in this case in favor of appellee. Moreover, the erroneous instruction precluded the jury from applying the proper legal standard set forth in *Dodson v. Elvey, supra,* and *Murray v. McCann, supra.* Even if the jury believed that appellant had sustained a central disc herniation, that as a result he was unable to engage in everyday activities, and that future medical attention was necessary to treat the injury, the jury was still prohibited by the trial court from making a determination that appellant's injury was a "substantial impairment to a bodily function" under the *Dodson* and *Murray* standard. Thus, we conclude that the trial court's jury instructions, taken as a whole, unfairly prejudiced appellant, warranting a new trial.

Based upon the foregoing analysis, we reverse the order of the trial court and remand for a new trial to determine whether appellant sustained a "serious injury," entitling him to an award of non-economic damages.[3]

Order reversed and case remanded for a new trial. Jurisdiction is relinquished.

---

**3.** In his third issue on appeal, appellant asserts that the trial court erred by limiting counsel's closing argument as to the calculation of damages. Because of our treatment of appellant's other issues, we need not address the merits of this claim.