William THOMAS

v.

E.B. JERMYN LODGE NO. 2, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 3, 1996.

Filed April 3, 1997.

Reargument Denied June 13, 1997.

---

Thomas W. Jennings, Philadelphia, for appellant.

Before McEWEN, P.J., EAKIN and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from a judgment entered on March 22, 1996, in favor of appellee, William Thomas. Appellant, E.B. Jermyn Lodge No. 2, raises the following issues for our review:

I. Is the jury verdict contrary to law in that [appellee] failed to present sufficient evidence to support a prima facie case of promissory estoppel, specifically, [appellant's] "promise" of legal fee assistance that [appellee] seeks to enforce was: (1) in blatant derogation of the specific requirements of [appellant's] By–Laws; (2) based on [appellee's] own actions, omissions and/or misrepresentations; and/or (3) made without fraudulent purpose or gross negligence?

II. Is the jury verdict, based on [appellee's] claim of promissory estoppel, contrary to law in that [appellee] did not present any evidence of injury or change of position associated with his asserted reliance on the grant of legal fee assistance by [appellant]?

III. Is the jury verdict contrary to law in that the grant of legal fee assistance to [appellee], a convicted felon, was approved by a limited number of [appellant's] members in blatant derogation of the By–Laws of [appellant] which constitute a contract between [appellant] and [appellee]?

IV. Is the jury verdict contrary to law in that [appellee] was convicted on his felony criminal charges and, therefore, was ineligible for [appellant's] legal assistance pursuant to [appellant's] longstanding policy?

V. Should a new trial be granted in that (1) the jury impermissibly awarded damages for [appellee's] use of a private investigator and/or attorney that was not authorized by [appellant]; (2) [appellee's] counsel improperly referred to the issue of "examscam" and prejudiced the jury; (3) the court failed to properly instruct the jury; (4) and/or the jury's finding for [appellee] on the basis of promissory estoppel is against the weight of the evidence and results in a miscarriage of justice.

Appellant's Brief at 4.[1]

On August 20, 1990, appellee filed a complaint against appellant, his fraternal lodge, for breach of contract for failing to pay the legal fees appellee incurred in defending himself on criminal charges that he improperly disseminated civil service test answers to Scranton police officers.[2] On February 8, 1995, after a three day trial, the jury returned a verdict in appellee's favor and awarded him $20,000.00 in damages. Appellant filed a post-trial motion for judgment notwithstanding the verdict or, alternatively,

---

1. We have renumbered appellant's issues for purposes of this appeal.

2. Appellee was ultimately convicted of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 in the United States District Court for the Middle District of Pennsylvania.

a new trial. On December 6, 1995, following oral argument, the trial court denied the motion and thereafter entered judgment upon the jury verdict. This timely appeal followed.

Appellant's first four issues essentially challenge the trial court's refusal to grant its motion for judgment notwithstanding the verdict.[3]

■■■ When reviewing a trial court's decision to deny a motion for judgment notwithstanding the verdict, the sole duty of this Court is to determine whether there was sufficient competent evidence to sustain the verdict. *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 539, 488 A.2d 21, 23 (1985). In addition, we must view the evidence in the light most favorable to the verdict winner, giving that party the benefit of every fact and inference that might reasonably be deduced from the evidence, and resolving all conflicts in their favor. *Lokay v. Lehigh Valley Farmers, Inc.,* 342 Pa.Super. 89, 94, 492 A.2d 405, 407 (1985).

Appellant's first issue, which includes three arguments, claims that the trial court erred in denying its motion for judgment notwithstanding the verdict because the evidence was insufficient to support a *prima facie* case of promissory estoppel.

■■■ This Court has previously stated that a cause of action under a theory of promissory estoppel will lie when a party relies to his or her detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be. *Rinehimer v. Luzerne Cty. Com. College,* 372 Pa.Super. 480, 496–98, 539 A.2d 1298, 1306 (1988), *appeal denied,* 521 Pa. 606, 555 A.2d 116 (1988). In Pennsylvania, the elements of promissory estoppel are:

(1) Misleading words, conduct or silence by the party against whom the estoppel is asserted,

(2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and

(3) no duty of inquiry on the party seeking to assert estoppel.

*Id.*

■■■ Appellant's first argument claims that appellee could not have reasonably relied upon appellant's promise to provide him with legal fee assistance, because the promise was made in derogation of appellant's by-laws.

Instantly, appellee testified that he presented a letter to the board of directors requesting legal representation, and that various board members asked him questions regarding the requested representation. N.T. 2/6/95 at 46. The minutes of the board of directors' meeting were then presented to the FOP members present at a regularly scheduled monthly members' meeting, which was held immediately after the board of directors' meeting. *Id.* At the members' meeting, appellee was not advised that he was required to request a special members' meeting to request legal fee assistance. *Id.* at 48. In addition, appellee testified that it was his recollection that "[i]t was normal to come to the regular monthly meeting," as this was how he had requested and received legal fee assistance in 1983. *Id.* Accordingly, as there was sufficient evidence from which the jury could find that appellee reasonably relied on appellant's promise to pay his legal fees, we dismiss appellant's first argument. *Rinehimer, supra.*

■■■ Appellant next argues that its promise was based on appellee's misrepresentations, and, therefore, appellee's promissory estoppel claim must fail, because a promise induced by the promisee's own misrepresentations defeats the estoppel. This argument, however, does not implicate any of the three elements of a *prima facie* case of promissory estoppel, and instead is in the nature of a defense. Accordingly, appellant's second argument fails.

■■■ Third, appellant argues that appellee's *prima facie* case must fail because ap-

---

**3.** Appellant couches its first four issues in terms of the jury verdict being "contrary to law." Given the procedural posture of this case, we read these claims as challenging the trial court's refusal to enter judgment notwithstanding the verdict.

pellant's promise was not made with a fraudulent purpose or gross negligence, at least one of which, appellant asserts, is required to establish an estoppel claim.

Here, appellee, the plaintiff below, invoked the doctrine of promissory estoppel in order to recover damages for appellant's promise to pay his legal fees. When promissory estoppel is pled as a theory of recovery, a cause of action will lie if the plaintiff relies on the intentional or negligent representations of another party. *Rinehimer, supra.* Accordingly, because appellant's third argument fails, we dismiss appellant's first issue on appeal.[4] *Id.*

■ Next, appellant claims that the evidence was insufficient to sustain the jury verdict because appellee failed to present evidence that he detrimentally relied or changed his position because of appellant's promise to provide him with legal assistance.

Here, appellee testified at trial that if he had not received appellant's authorization to secure legal representation, he would not have retained Attorney Farrell, because appellee did not have any money. N.T. 2/6/95 at 64. In addition, appellee testified that he may have acted differently if no vote had been taken for his legal representation, and that he had paid his attorneys $32,000.00 for defending him in the criminal case. *Id.* at 79. Finally, we note that appellee testified that he agreed to borrow money from his mother to pay his legal fees, "as long as [appellant] was representing to [appellee] that [appellant] intended to pay" appellee's legal bill.[5] N.T. 2/6/95 at 59. Accordingly, as there was evidence from which the jury could find that appellee relied to his detriment, we dismiss this claim. *Rinehimer, supra.*

■ In appellant's next two issues, it claims that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict because the grant of legal fee assistance to appellee was approved in derogation of appellant's by-laws and in contravention of its policy against providing legal assistance to police officers who are criminally convicted. However, these issues do not challenge the sufficiency of the evidence, and instead examine appellant's procedures and policies. Accordingly, we decline to address these claims. *See Seewagen, supra* (this Court's sole duty on appeal from the denial of a motion for judgment notwithstanding the verdict is to determine whether there was sufficient competent evidence to sustain the verdict).

Finally, appellant claims that a new trial should be granted on various grounds.

This Court has previously stated that:

It is well-established that the decision to either grant or deny a motion for a new trial is within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent a palpable abuse of discretion or clear error of law. Pennsylvania appellate courts rarely reverse a trial court's decision on a motion for a new trial.

*Loos & Dilworth v. Quaker State Oil Refining Corp.,* 347 Pa.Super. 477, 481, 500 A.2d 1155, 1157 (1985).

■ Appellant first claims that it is entitled to a new trial because the jury award was not supported by the evidence. Specifically, appellant claims that because appellee's legal fees and costs for defense attorney Farrell totalled $18,000.00, the award of $20,000.00 was $2,000.00 too high.

Appellee testified that in accordance with the FOP's directions, he tendered $10,000.00 in cash to Attorney Farrell sometime after March 1988. N.T. 2/6/95 at 60. Appellee also stated that in April and June of 1988, he issued two (2) more checks to Attorney Farrell for $10,000.00 each, and that Mr. Farrell paid Attorney Barrasse from these funds. *Id.* at 61. Accordingly, although appellee's

---

4. The case appellant cites for this proposition, *Hertz Corp. v. Hardy,* 197 Pa.Super. 466, 178 A.2d 833 (1962), is inapplicable in the present case, as promissory estoppel was invoked here as a theory of recovery. In *Hardy,* the defendant raised estoppel as an affirmative defense in a replevin action. *Id.* at 471, 178 A.2d at 836.

5. Appellee testified that he told Brother Gavern, who was then president of the FOP, that "I'll pay the bill as long as you're saying you're going to pay me back," and that the FOP agreed to this. N.T. 2/6/95 at 59.

fee agreement with Attorney Farrell was for $18,00.00, there was sufficient evidence from which the jury could find appellee expended more than that sum in legal fees. Therefore, we decline to reverse the jury verdict on this basis.

 Appellant next asserts that it is entitled to a new trial because appellee's counsel referred to the issue of exam scam in violation of a trial court order, and therefore prejudiced the jury.

 A trial court has discretion to determine the scope and limits of cross-examination, and its decision will be reversed only for an abuse of that discretion. *Commonwealth v. La,* 433 Pa.Super. 432, 458, 640 A.2d 1336, 1350 (1994).

The trial court here granted appellee's oral motion in limine to restrict the parties questions regarding the 1985 civil service exam scandal, and the parties agreed to limit their questions to those necessary to place the instant case in a factual context. N.T. 2/6/95 at 3–4. At trial, appellant's counsel questioned appellee on cross-examination regarding whether appellee had received the answers to the 1985 civil service examination, and whether appellee had disseminated the answers to his fellow police officers. N.T. 2/6/95 at 110, 114. Thereafter, appellee's counsel questioned Scranton police officer Joseph Chiochio on cross-examination regarding whether officer Chiochio had received the answers to the 1985 civil service exam. N.T. 2/7/95 at 16–20. Appellee's counsel also questioned ex-police officers Robert Kerrigan and Eugene Carroll on cross-examination regarding Officer Kerrigan's receipt of the 1985 civil service exam answers and Officer Carroll's knowledge of the promotions following that exam. N.T. 2/7/95 at 139–143; 2/8/95 at 57–60. After carefully reviewing the certified record, we find that these witnesses' testimony were within the trial court order and do not find appellant to have been prejudiced thereby. Accordingly, we dismiss this claim. *La, supra.*

Next, appellant claims that the trial court failed to properly instruct the jury, because the trial court refused to read seven (7) of appellant's proposed jury instructions.

 In determining whether to reverse a jury verdict due to an erroneous jury charge, this Court must look at the jury charge as a whole. *Chanthavong v. Tran,* 452 Pa.Super. 378, 389–91, 682 A.2d 334, 340 (1996). If the charge inaccurately describes the law, there is error, but error alone will not mandate a new trial. *Id.* To constitute reversible error, the jury instruction must not only be erroneous, but must also be harmful to the complaining party. *Id.*

Three (3) of the proposed jury instructions related to appellant's by-laws,[6] while four (4) proposed instructions related to the doctrine of promissory estoppel as it exists in Pennsylvania.

 Instantly, the trial court instructed the jury that the FOP is "governed by its constitution and bylaws," and that "[t]he law treats the constitution and bylaws as a contract between the association and its members." N.T. 2/8/95 at 141. The trial court then stated that "[appellee] has only the rights and privileges that are specifically described in the constitution and bylaws, no more and no less," and that FOP members could "amend the constitution and bylaws but only by amendment procedures provided by the document itself." *Id.* at 142, 150. In addition, the trial court instructed the jury that, because appellee was a member of the FOP, he was bound by the bylaws that only permitted motions for legal assistance to be considered at special meetings of the general membership, and that the jury was to "consider whether [appellee] could have reasonably relied upon the FOP conduct at that regular meeting that he knew or should have known to be in violation of [appellant's] by-laws." *Id.* at 143. As the jury charge essentially covered the issues raised in appellant's proposed charges numbers 2 and 4, we de-

6. These three instructions essentially claimed that the by-laws constituted a contractual relationship with appellant and its members.

cline to overrule the jury verdict on this basis.[7]

 Regarding the doctrine of promissory estoppel, the trial court clearly instructed the jury that "[p]romissory estoppel occurs when one party acts or fails to act to his detriment in reasonable reliance upon the promise of another." N.T. 2/8/95 at 143–144. The trial court also stated that "it is essential that the party in whose favor [the doctrine] is invoked must himself have acted in good faith," and that appellant was obligated to fully disclose to appellant the essential facts underlying his request for legal assistance. *Id.* at 142. Finally, the record reveals that the trial court instructed the jury that appellant could not claim an estoppel if appellant was induced into making a promise based upon a fraudulent representation. *Id.* Reviewing the jury charge as a whole, we cannot say the trial court inaccurately described the law so as to constitute reversible error. *Chanthavong, supra.*

 Finally, appellant claims that the jury verdict was against the weight of the evidence.

 This Court will not grant a new trial based on weight of the evidence issues unless the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts, or with ordinary experience, as to render the verdict shocking to the court's sense of justice. *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985).

The evidence at trial tended to show that appellant promised to pay appellee's legal assistance fees and expenses, that appellee relied upon this promise by securing counsel to defend him in the criminal case, and that counsel proceeded to act on appellee's behalf. While there was testimony challenging the manner in which appellee sought permission from appellant for the payment of his legal fees, we find there was sufficient evidence from which the jury could find that appellee

established a case of promissory estoppel. Accordingly, we dismiss this claim.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

McEWEN, P.J., concurs in the result.

---

7. Appellant's proposed jury instruction No. 5 addressed whether appellant is obligated to pay legal assistance to a member who is convicted of a crime. However, as this issue is not relevant to the issue of whether appellee has sustained his burden of production for a case of promissory estoppel, we dismiss this claim.