# Cordaro v. Hedderick

354

C.P. of Lackawanna County, no. 95-CV-233.

*Michael C. Cowley,* for plaintiff.
*James A. Doherty Jr.,* for defendant.

NEALON, *J.,* April 12, 2000—Defendant, Steven J. Hedderick, has filed a motion for summary judgment seeking to dismiss any claims for noneconomic damages by plaintiff, Samuel J. Cordaro, on the grounds that Cordaro selected the "limited tort" option but has not suffered a "serious injury" under section 1705(d) of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. Hedderick's motion raises a novel issue of apparent first impression under section 1705(d): whether a claimant who is already vocationally disabled at the time of an accident due to an impairment involving one part of his anatomy can suffer a "serious impairment of body function" by sustaining distinctive injuries to other areas of his body? Since Cordaro's submissions create an issue of fact as to whether his neck and back injuries have sufficiently impeded his ability to engage in activities that he could previously perform, notwithstanding his heart-related disability, the motion for summary judgment will be denied.

## I. FACTUAL BACKGROUND

On February 14, 1993, Cordaro was involved in an accident with Hedderick when his vehicle was rear-ended by Hedderick's automobile on North Blakely Street in Dunmore. At the time of the accident, Cordaro was covered by an insurance policy for which he had selected the "limited tort" option that restricted his ability to recover noneconomic damages. (See defendant's motion for summary judgment ¶3; plaintiff's response to motion for summary judgment, ¶3.) In addition, Cordaro was already disabled as of February 14, 1993, due to a work-related heart condition and had been collecting workers' compensation benefits since 1984 based upon that disability. (See plaintiff's answer to defendant's interrogatory no. 10; Samuel J. Cordaro depo. dated 9/5/97, pp. 6-7.)

On the day following the accident, Cordaro was examined by his family physician, Dr. Michael A. Minora, for complaints of back pain and bleeding from his mouth caused by impact with the steering wheel. (See Cordaro depo., pp. 21-22.) Dr. Minora advised Cordaro to consult with a chiropractor, (Id., pp. 22, 25), and on February 22, 1993, he began treating with Dr. Stanley J. Solack of the Mid-Valley Chiropractic Clinic. (See medical records attached to plaintiff's answers to defendant's interrogatories dated 2/13/97.) On March 23, 1993, Cordaro was also examined by a dentist, Dr. Niranjan Desai, who recommended extraction of six teeth, (see Dr. Niranjan Desai report dated 2/11/00), but that procedure was never performed since the damaged teeth spontaneously fell out shortly thereafter. (Cordaro depo., p. 34.)

Between February 22, 1993, and March 23, 1994, Dr. Solack examined Cordaro on 92 separate occasions and

diagnosed his accident-related injuries as cervical cranial syndrome, cervical neuralgia, cervical sprain/strain, lumbar intervertebral disc syndrome and lumbago. Dr. Solack's treatment consisted of chiropractic manipulations and spinal adjustments, electrical stimulation, hydroculator treatment, interferential therapy and hydrotherapy. In his report dated July 7, 1993, Dr. Solack remarked that "[p]rior to this incident, the patient was essentially asymptomatic. However, the symptoms which have appeared subsequently indicate that this injury is serious and will precipitate symptoms well into the future." [1] (See Mid-Valley Chiropractic records attached to plaintiff's answers to defendant's interrogatories dated 2/13/97.)

Notwithstanding his heart condition, Cordaro was reportedly capable of performing his customary duties such as gardening, garbage removal, laundry, cooking, sweeping and general housecleaning. (Cordaro affidavit ¶13.) As a result of his neck and back injuries, Cordaro can no longer engage in those activities, nor can he operate a motor vehicle for more than 30 minutes. (*Id.*, ¶¶13-14.) Furthermore, Cordaro continues to experience chronic "difficulty sleeping, walking and doing chores due to back pain." (*Id.*, ¶5.)

With regard to his current treatment regimen, Cordaro performs home exercises and therapy that were prescribed

1. During his deposition on September 5, 1997, Cordaro testified that he had been examined by Dr. Solack one week earlier. (Cordaro depo., p. 29.) In his affidavit dated March 31, 2000, Cordaro again attested that he "saw Dr. Solack as late as 1997." (See affidavit of Samuel Cordaro dated 3/31/00, ¶8.) However, in opposing Hedderick's motion for summary judgment, Cordaro has not provided any records from Dr. Solack which post-date March 23, 1994, despite being granted leave of court to produce the same.

by Dr. Solack and which are supervised by Cordaro's son who is a certified chiropractic rehabilitation assistant. (*Id.,* ¶9.) Since the date of the accident, Cordaro has undergone a coronary artery bypass graft and a heart transplant, as a result of which he is "presently required to engage in daily cardiac rehabilitation." (*Id.,* ¶11.) Cordaro's back pain compromises his ability to perform many of the exercises that have been prescribed by his cardiologist. (*Id.*) According to Cordaro, "[a]lthough [his] heart condition was severely disabling for period of time, [he] led a relatively normal life despite that condition. As of today, the trauma from the automobile accident causes [him] much more pain and limitation than does [his] heart condition." (*Id.,* ¶16.)

Hedderick contends that he is entitled to summary judgment since "[i]t is undisputed that the plaintiff was totally disabled from a non-accident-related heart condition at the time of the accident" and "there is no genuine issue of material fact that the plaintiff did not suffer a serious injury as his injuries have not had a serious impact on his lifestyle for an extended period of time and do not interfere substantially with his normal activities." (See defendant's motion for summary judgment, ¶¶21, 26.) Cordaro maintains that his "life and sleeping patterns have been compromised as has his ability to move without pain on a regular and daily basis" and that his "loss of teeth, in and of itself, is a serious and permanent injury." (See plaintiff's answer to motion for summary judgment, ¶26.) The parties have submitted their memoranda of law and supporting documentation and this matter is ripe for disposition.[2]

---

2. By letter dated April 6, 2000, counsel for Hedderick forwarded a letter to the court objecting "to any consideration being given to

## II. DISCUSSION

### (A) *Standard of Review*

With the adoption of the 1990 amendments to the MVFRL, 75 Pa.C.S. §1701 et seq., a named insured may now purchase full tort or limited tort coverage for a private passenger motor vehicle insurance policy. See 75 Pa.C.S. §1705(a). If the consumer elects limited tort coverage, [s]he is entitled to a reduced premium charge but is generally precluded from claiming damages for non-economic loss unless [s]he sustains a serious injury.[3] 75

[Cordaro's] affidavit pursuant to the *Nanty-Glo* line of cases." In *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), the Supreme Court of Pennsylvania formulated what is commonly referred to as the *Nanty-Glo* rule which generally prohibits the entry of summary judgment where the moving party attempts to demonstrate the absence of a genuine issue of material fact by submitting uncontradicted oral testimony via affidavits or depositions. *Schroeder v. PennDOT,* 551 Pa. 243, 247, 710 A.2d 23, 25 (1998); *O'Rourke v. Pennsylvania Department of Corrections,* 730 A.2d 1039, 1041 (Pa. Commw. 1999). While a moving party may not secure summary judgment based upon an affidavit, "the nonmoving party may respond to the motion by relying solely on an affidavit to create a genuine issue of material fact, *i.e.,* a credibility determination for the jury." *Gruenwald v. Advanced Computer Applications Inc.,* 730 A.2d 1004, 1009 (Pa. Super. 1999). Hence, although the *Nanty-Glo* rule bars Hedderick from obtaining summary judgment based upon an affidavit, it does not preclude Cordaro from successfully opposing Hedderick's motion with an uncontroverted affidavit.

3. An individual who is otherwise bound by the limited tort election may nonetheless be entitled to full tort status if: (1) the tort-feasor is convicted of or accepts Accelerated Rehabilitative Disposition for driving under the influence of alcohol or a controlled substance at the time of the accident; (2) the negligent party is operating a motor vehicle registered in another state; (3) the motorist who is at fault intentionally injured the plaintiff; (4) the tort-feasor has not maintained the

Pa.C.S. §1705(d). Cf. *Price v. Guy,* 558 Pa. 42, 49, 735 A.2d 668, 672 (1999) (trial court committed reversible error by informing the jury that the motorist had elected the limited tort option in exchange for reduced insurance premiums). Under the MVFRL, a serious injury is defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702.

It is now well settled that the traditional summary judgment standard governs threshold "serious injury" determinations which are "to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury ha[s] been sustained." *Washington v. Baxter,* 553 Pa. 434, 446-47, 719 A.2d 733, 740 (1998); *Furman v. Shapiro,* 721 A.2d 1125, 1126 (Pa. Super. 1998). To withstand a motion for summary judgment a nonmoving party must adduce sufficient evidence on an essential issue to which [s]he bears the burden of proof such that a jury could return a verdict in favor of that party. *Washington,* 553 Pa. at 447, 719 A.2d at 737. In considering a summary judgment motion involving a "serious injury" challenge, the record must be viewed in a light most favorable to the nonmovant with all doubts as to the existence of a genuine issue of material fact being resolved against the moving party. *Hames ex rel. Hames v. Philadelphia Housing Authority (Hames II),*

---

required financial responsibility or insurance; (5) the injury was caused by a defect or unsafe condition involving the vehicle and the defendant is engaged in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles; or (6) the insured was injured while an occupant of a vehicle other than a "private passenger motor vehicle" as defined by section 702 of the MVFRL. *Rivera v. Barone,* 99 Lacka. Jur. 130, 133 n.2 (1998) (citing 75 Pa.C.S. §1705(d)(1), (2) and (3)).

737 A.2d 825, 828 n.4 (Pa. Commw. 1999); *Furman, supra.* Even if the parties agree as to the salient facts, summary judgment should not be granted if those facts support conflicting inferences. *Washington,* 553 Pa. at 447 n.10, 719 A.2d at 740 n.10; *Rivera,* 99 Lacka. Jur. at 136.

## (B) *"Serious Injury" Analysis*

Regrettably, neither the MVFRL nor the legislative history accompanying the enactment of the 1990 amendments provide any guidance concerning the definition of "serious impairment of a body function." *Washington,* 553 Pa. at 447, 719 A.2d at 740; *Hellings v. Bowman,* 744 A.2d 274, 276 (Pa. Super. 1999); *Furman,* 721 A.2d at 1126. Nevertheless, the Supreme Court of Pennsylvania has expressly adopted the following standard that was articulated in *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986):

"The 'serious impairment of body function' threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent and permanency of the impairment. . . . In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impair-

ment need not be permanent to be serious." *Washington,* 553 Pa. at 447, 719 A.2d at 740; *Hellings, supra.*

Consequently, in conducting a "serious injury" inquiry, the focus is not on the injury itself, but on the nature and extent of the impairment resulting from the injury. *Hames II,* 737 A.2d at 828; *Rivera,* 99 Lacka. Jur. at 137. As a result, a soft tissue injury may constitute a "serious impairment of a body function" if it has adequately interfered with a body function. *Chanthavong v. Tran,* 452 Pa. Super. 378, 392, 682 A.2d 334, 341 (1996); *Murray v. McCann,* 442 Pa. Super. 30, 38, 658 A.2d 404, 408 (1995). Moreover, an impairment need not be demonstrated by objective medical evidence in order to satisfy the serious injury test. *Robinson v. Upole,* 2000 Pa. Super. Lexis 355, *10 (Pa. Super. April 3, 2000); *Hames II,* 737 A.2d at 829 (the *Washington* court "did not adopt the language from *Dodson* [*v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995), *rev'd and remanded,* 554 Pa. 245, 720 A.2d 1050 (1998)] that objective medical evidence is required to cross the serious injury threshold"); *Murray,* 442 Pa. Super. at 37, 658 A.2d at 407 (holding that the trial court erred by stating "that serious bodily injury impairment could not be found in the absence of an injury that was objectively manifested" since the *DiFranco* standard does not limit "recovery of noneconomic damages to a plaintiff whose injuries can be seen or felt by a clinical test").

The "serious impairment of body function" analysis "is not based on one determinant factor alone; it is based upon a totality of the facts of the case." *Kelly v. Ziolko (Kelly I),* 705 A.2d 868, 874 (Pa. Super. 1997), *rev'd on other grounds,* 556 Pa. 57, 726 A.2d 1038 (1999) (remanded for a determination consistent with *Washington);*

*Rivera,* 99 Lacka. Jur. at 138. Thus, while the length of time an impairment has lasted is relevant, the impairment need not be permanent to qualify as serious. *Leonelli v. McMullen,* 700 A.2d 525, 527-28 (Pa. Super. 1997); *Murray,* 442 Pa. Super. at 39 n.3, 658 A.2d at 408 n.3. Additionally, the fact that a plaintiff has returned to work does not bar the existence of a serious injury. *Kelly v. Ziolko (Kelly II),* 734 A.2d 893, 900 (Pa. Super. 1999); *Furman,* 721 A.2d at 1127. Nor is it fatal to a "serious impairment of body function" claim that the plaintiff has discontinued medical treatment for the injury. See *Kelly II, supra* (case remanded for jury trial even though plaintiff did not currently receive "treatment or prescriptive medication for his pain"); *Furman, supra* (although plaintiff had terminated her treatment and physical therapy within one year of the accident, a jury must decide "serious injury" issue); *Leonelli,* 700 A.2d at 529 (failure of plaintiff to seek medical treatment due to financial constraints does not prove that injuries were not serious).

Cordaro has suffered soft tissue injuries to his cervical and lumbar areas, as well as the loss of damaged teeth. Applying the *Washington/DiFranco* criteria, those injuries have allegedly impaired his capacity to perform his usual household chores and cardiac rehabilitation exercises and have compromised his proficiency to walk and drive. According to Cordaro, his symptoms continue to persist seven years after the accident and have adversely affected his ability to sleep. See *Rivera,* 99 Lacka. Jur. at 139-40 (accident-related sleeplessness may possibly constitute a serious impairment of body function); *Powell v. Nettinger,* 28 Mercer Co. L.J. 437, 440 (1998) ("reasonable minds could conclude that a significant reduction of a person's sleep is a serious impairment of body func-

tion"). Moreover, Cordaro's injuries required more than one year, and perhaps in excess of four years, of medical and chiropractic treatment. (See n.1, *supra.*)

Hedderick contends that Cordaro cannot establish a serious injury under section 1705 since he was already disabled at the time of the accident as a result of his work-related heart condition. Although neither party has cited any controlling case law, *Washington* and its progeny do not support the conclusion that a claimant who is vocationally disabled due to an impairment involving one organ is inexorably disqualified from later suffering a serious injury to another part of his anatomy. On the contrary, Pennsylvania courts have required individualized consideration of serious injury claims by analyzing on a case-by-case basis the impact that an injury has had on a particular body function.

An argument comparable to that being asserted by Hedderick was raised by the defendant in *Sanderson-Cruz v. USA,* 2000 U.S. Dist. Lexis 2379 (E.D. Pa. March 6, 2000). In that case, the plaintiff had a prior history of back pain caused by a herniated disc that had been objectively diagnosed by an MRI scan and which had been treated with physical therapy and epidural steroid injections. *Id.,* 2000 U.S. Dist. Lexis 2379, at *3-4. Although the plaintiff sought to recover damages for exacerbation of her chronic back injury, the defendant asserted that since "Sanderson-Cruz suffered from chronic lower back pain prior to the accident and her inability to work was unrelated to the accident but rather stemmed from her pre-existing condition," the plaintiff's claims for non-economic damages should be dismissed due to the absence of a serious injury. Noting that the materials submitted by the parties "support an inference that as a re-

sult of the accident, Sanderson-Cruz continues to have pain in her back and neck, cannot perform her former job as a physical therapy aid because of physical limitations and cannot enjoy some of life's many pleasures such as gardening, horseback riding, and sexual intercourse," the federal district court denied the motion for summary judgment and found that "there is a genuine issue of material fact as to whether the accident caused Sanderson-Cruz to re-injure or cause her lower back condition to be aggravated or whether the accident did in fact cause her any injury." *Id.*, at *20-21.

There is no logical basis for allowing a jury to determine whether an aggravation of a pre-existing injury to the same body part can constitute a serious impairment of body function, see *Sanderson-Cruz,* but denying the same opportunity to a plaintiff who has a prior disability affecting one portion of his anatomy and later sustains distinct injuries to other areas of his body. Examining the record in a light most favorable to Cordaro, reasonable minds could differ as to the extent of the impairment to his neck and back and the manner in which it has affected his former activities. See *e.g., Hellings, supra* (plaintiff's injuries prevented him from skiing and limited his ability to hunt and ride horses); *Kelly II, supra* (although plaintiff returned to work within three days, he experienced trouble sleeping and could not engage in many recreational activities); *Radziwon v. Zarezycki,* 1999 WL 310662, *4 (E.D. Pa. 1999) (motion for summary judgment denied since plaintiff claimed she had difficulty lifting, carrying and riding a bicycle and her sexual relations with her husband had been diminished). Since "the provisions of the MVFRL are to be liberally construed to advance the policy of indemnifying victims

of accidents for injuries sustained on state roadways," *Hames v. Philadelphia Housing Authority (Hames I),* 696 A.2d 880, 882 (Pa. Commw. 1997); *Rivera,* 99 Lacka. Jur. at 138, a triable issue of fact exists in this case regarding the presence or absence of a serious impairment of body function and Hedderick's motion for summary judgment will be denied.

## ORDER

And now, April 12, 2000, upon consideration of "defendant's motion for summary judgment," the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that the motion of defendant, Steven J. Hedderick, for summary judgment is denied.