Richard A. SHIPE, Plaintiff,

v.

ALLSTATE INSURANCE
CO., Defendants.

No. 1:CV–90–1927.

United States District Court,
M.D. Pennsylvania.

March 31, 1992.

William A. Hebe, Wellsboro, Pa., for plaintiff.

Donald B. Kaufman, McNees Wallace & Nurick, Harrisburg, Pa., for defendants.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff Richard A. Shipe, while a passenger in a vehicle owned and operated by Ronald T. Boyanowski, was injured in an automobile accident caused by an underinsured motorist. This action was filed by Shipe in the Court of Common Pleas for Tioga County, Pennsylvania, on October 12, 1990, to reform the automobile insurance policy issued by the defendant Allstate Insurance Co. ("Allstate") to Boyanowski to provide underinsured motorist coverage in the amount of $100,000 per person, $300,000 per accident, stackable to a total of $300,000 in benefits for the aforementioned accident. On November 5, 1990, Allstate removed the action to federal court. 28 U.S.C. § 1332(a)(1), § 1441(a).

Currently before the court are the parties' cross-motions for summary judgment.

## FACTS

The following is a summary of the relevant facts in this matter:

Subsequent to comparing the premium rates charged by various insurance companies, Ronald Boyanowski applied for automobile insurance with Allstate on May 12, 1986. He obtained coverage for bodily injury liability of $100,000 per person, $300,000 per accident and for underinsured motorist coverage of $15,000 per person, $30,000 per accident. At his deposition, Boya-nowski testified that he was "knowledgeable of what insurance [he] was purchasing". Boyanowski deposition at 13. He specifically chose to purchase the coverage requested on the application and was fully aware of the extent of the coverage. Id. at 15. He understood that the underinsured motorist coverage was intended to protect him in the event of an accident or claim involving an underinsured motorist. Id. at 16. In addition, while he believed that the underinsurance coverage he received was the common coverage that went with his application, he was sure that the agent told him that he was entitled to purchase more underinsurance coverage. Id. at 15. Finally, he specifically stated that he applied for insurance "to provide the coverages that [he] wanted that [he] had experienced on the previous insurance policies at a lower premium". Id. at 16.

Boyanowski signed the application and reviewed the policy when he received it in the mail. Id. at 10 and 19. It was also his common practice to review the Declaration sheets renewing his policy to confirm that the coverage was that which he had requested and to determine that the premium was correct. Id. at 30.

On August 26, 1988, Richard Shipe was injured in an automobile accident while riding in the front passenger seat of a car driven and owned by Ronald Boyanowski. The other car involved in the collision was driven by Monroe L. Daniel. Daniel was at fault, but his insurance policy provided the minimum liability coverage of $15,000 for bodily injury. Daniel's insurance company has since paid this amount to Shipe.

At the time of the accident, the car driven by Boyanowski was one of three vehicles insured by him under a policy with Allstate. The coverage on this policy was identical to the coverage he applied for in 1986. Shipe filed this action to reform the policy issued by Allstate to Boyanowski to provide underinsured motorist coverage in the amount of $100,000 per person, $300,000 per accident, stackable to a total of $300,000 in benefits for the aforementioned accident. Shipe is not a relative of Boya-

nowski and does not reside in Boyanowski's household.

## SUMMARY JUDGMENT STANDARD

██ Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

██ Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).

## DISCUSSION

██ On October 1, 1984, Pennsylvania enacted the Motor Vehicle Financial Responsibility Law ("MVFRL"). The law requires insurance companies to provide uninsured and underinsured motorist coverage in amounts equal to the bodily injury liability coverage except where the named insured requests in writing coverage in amounts less than the limits of liability for bodily injury. See 75 Pa.Cons.Stat.Ann.

§§ 1731 and 1734 (Purdon 1991). To this end, the MVFRL provides "[i]t shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice ... is given to the applicant at the time of application for original coverage ..." 75 Pa.Cons.Stat.Ann. § 1791 (Purdon 1991). The statute goes on to provide the precise language for this notice which states, in part, "[y]our signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected." Id.

An insured's signature on the notice establishes a conclusive presumption that he has actual knowledge of the coverage available to him under the MVFRL. *Prudential Property & Casualty Ins. Co. v. Pendleton*, 858 F.2d 930, 936 (3d Cir.1988). In the absence of such a signed notice, the burden is placed upon the insurance company to prove that the insured knowingly and intelligently waived in writing the coverage available under the MVFRL. *Groff v. Continental Ins. Co.*, 741 F.Supp. 541, 547 (E.D.Pa.1990) (citing *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61, 64–65 (1973)). Therefore, in the instant case, Allstate must prove that Boyanowski knowingly and intelligently waived in writing the benefit of the higher underinsured motorist coverage.

██ In *Groff*, addressing the parties' cross-motions for summary judgment, the court held that the uncontradicted evidence established that the insured knowingly and intelligently made an election of lower underinsured motorist coverage.

Without question, Raymond Groff signed the form which checked a single limit of uninsured motorist coverage in the amount of $35,000. According to representatives of Stirling, the levels of coverage available under the Continental policy were explained to the Groffs, as in prior years. Also, uninsured motorist coverage in general was explained to the Groffs in an earlier year. Raymond Groff himself testified that he never

signed anything without knowing what it was.

Plaintiff's only response to this evidence is that neither Bette or Raymond Groff remember making the election for lower coverage or recall discussing uninsured motorist coverage with any representative of Stirling. This lack of memory or knowledge alone is insufficient to create a genuine issue of material fact as to whether Raymond Groff made a knowing and intelligent election for lower uninsured motorist coverage. Therefore, the evidence presented by Continental on this issue remains uncontradicted.

Moreover, the evidence of events which occurred prior to and after the election by Raymond Groff support the conclusion that Raymond Groff acted knowingly and intelligently. First, for several years previously, the Groffs obtained the same level of uninsured motorist coverage, a single $35,000 limit, from other companies—Federal Kemper Insurance Company and Utica Mutual Insurance Company. Second, the Groffs only paid the premium for the lower amount of uninsured motorist coverage. In fact, they received a reduction in their premium reflecting Raymond Groff's election of lower coverage. Third, the Groffs never questioned the level of their uninsured motorist coverage, after receiving the endorsement amending the policy and incorporating the Pennsylvania Supplemental Automobile Application signed by Raymond Groff into the policy by reference. Finally, when the Groffs added vehicles to their insurance during the policy period, the forms they received from Continental also noted that the uninsured motorist coverage was a single $35,000 limit.

*Id.* at 548.

In the instant case, Boyanowski signed the application and reviewed the policy and the Declaration sheets renewing his policy to confirm that the coverage was that which he had requested. Base upon the holding in *Groff,* this alone could constitute a knowing and intelligent election of lower coverage by Boyanowski. However, additional facts militating towards a knowing

and intelligent election are present in this action. Boyanowski has testified that he was knowledgeable of the insurance he was purchasing, specifically chose to purchase the coverage requested on the application and was fully aware of the extent of the coverage. He also testified that he understood that the underinsured motorist coverage was intended to protect him in the event of an accident or claim involving an underinsured motorist and he was sure that the agent told him that he was entitled to purchase more underinsurance coverage. Finally, he indicated that he applied for insurance which would provide the coverages that he wanted and had experienced on previous insurance policies and chose Allstate after comparing the rates of various insurance companies.

Despite Shipe's arguments to the contrary, there is no genuine issue of material fact as to whether Boyanowski knowingly and intelligently elected in writing to purchase underinsured motorist coverage lower than the limits he was entitled to under the MVFRL. The facts clearly demonstrate that he did.

■ Finally, although Shipe does not present any argument in support of his stacking claim, under the facts of this case such a claim is unfounded. *See General Accident Insurance Co. v. St. Peter,* 334 Pa.Super. 6, 482 A.2d 1051 (1984) (a passenger injured in an automobile accident who is not specifically mentioned as an intended beneficiary under the insurance policy covering the vehicle in question is not permitted to stack the uninsured motorist benefits applicable to the owner's other vehicles).

An appropriate Order will be entered.

### ORDER

For the reasons stated in the accompanying memorandum, it is Ordered that:

1. Plaintiff Richard A. Shipe's motion (record document # 5, filed August 1, 1991) for summary judgment is denied.

2. Defendant Allstate Insurance Company's motion (record document # 7, filed

August 1, 1991) for summary judgment is granted.

3. The Clerk of Court is directed to enter judgment in favor of the defendant and against the plaintiff and close the case file.