672 A.2d 786

Darlene C. TUKOVITS, individually and as administratrix of the estate of Joseph S. Tukovits, deceased, Appellee,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA and Prudential Property and Casualty Insurance Company, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 11, 1995.

Filed Feb. 1, 1996.

Reargument Denied April 1, 1996.

542

R. Bruce Morrison, Philadelphia, for appellants.

Joel H. Ziev, Easton, for appellee.

Before DEL SOLE, BECK and HUDOCK, JJ.

HUDOCK, Judge:

This is a timely appeal from the order granting summary judgment in favor of Appellee on February 1, 1995. For the reasons below, we affirm.

The facts may be summarized as follows: In 1984, Joseph Tukovits' insurance policy with The Prudential Insurance Company of America and Prudential Property and Casualty Insurance Company (Prudential) became subject to the Motor Vehicle Financial Responsibility Law of 1984 (MVFRL).[1] At that time, Mr. Tukovits' insurance policy provided uninsured motorist/underinsured motorist (UM/UIM) coverage in the amount of $15,000 each person, $30,000 each accident ($15/30) and bodily injury coverage in the amount of $100/300. In October of 1984, Prudential mailed Mr. Tukovits the following elective writing (10/9/84 elective writing), which Mr. Tukovits marked, signed and returned:

1. 75 Pa.C.S.A. §§ 1701–1799.7.

Shortly, we will be offering a renewal policy to you. The Insurance Laws in your state require us to offer Uninsured/Underinsured Motorists Coverage equal to your Bodily Injury Liability limits effective on your policy renewal date. You currently carry Bodily Injury Liability limits of $100,000 each person, $300,000 each accident and Uninsured/Underinsured Motorists limits of $15,000 each person, $30,000 each accident.

If you do not wish to have your Uninsured/Underinsured Motorists Coverage equal to your Bodily injury Liability Coverage, you may retain your current Uninsured/Underinsured Motorists limits or choose Uninsured/Underinsured Motorists limits lower than your Bodily Injury Liability limits. PLEASE INDICATE YOUR CHOICE BELOW AND RETURN THIS ENTIRE FORM IN THE ENCLOSED POSTAGE PAID RETURN ENVELOPE WITHIN 14 DAYS. By returning this completed Coverage Election Form, you are making certain your renewal policy will be issued with the Uninsured/Underinsured Motorists limits of your choice.

I have read the above explanation and enclosed policyholder letter and choose to:

x Renew my policy with my present Uninsured/Underinsured Motorists limits

_____ Renew my policy with Uninsured/Underinsured Motorists limits lower than my Bodily Injury Liability limits. The limits I wish to renew with are:

|  Each person  |  Each accident  |
| --- | --- |
| $_____ | $_____ |

_____ Renew my policy with Uninsured/Underinsured Motorists limits equal to my Bodily Injury Liability limits

I agree that the Uninsured/Underinsured Motorists limits I have elected will remain the same in any renewal supplementary, replacement or substitute policy, even if I change my Bodily Injury Liability limits or insured cars at a later date. However, if I change my Bodily Injury Liability limits to an amount less than my elected Uninsured/Under-

insured Motorists limits, I understand that my Unin-sured/Underinsured Motorists limits will automatically be lowered to the same amount.

If at any time I desire to change this election, it will be my responsibility to notify the Company in writing.

Signed [2]                              Dated

_____          _____
Policyholder Name

Brief in Support of Defendant's Motion for Summary Judgment, exhibit 1.

Prior to and after the 10/9/84 elective writing, Mr. Tukovits' policy reflected that his UM/UIM coverage was $15/30. Twenty-seven changes were made to the insurance policy during this time, nineteen of which were made prior to Mr. Tukovits' death on May 7, 1992, when he died in a fatal accident with an uninsured motorist.[3]   Subsequently, Mrs. Tukovits filed a declaratory judgment action against Prudential seeking a declaration that the 10/9/84 elective writing was invalid.   In the absence of a valid election of UM/UIM limits, Mrs. Tukovits argued that the MVFRL mandated that the UM/UIM limit be equal to the bodily injury limit of $100,000 per vehicle, for four vehicles, for a total of $400,000.

Mrs. Tukovits and Prudential filed cross-motions for judgment on the pleadings, but the trial court denied both motions and ordered that the issues involved be addressed in motions for summary judgment.   Mrs. Tukovits and Prudential then filed cross-motions for summary judgment.[4]   The trial court held oral arguments on these motions and subsequently granted summary judgment in favor of Mrs. Tukovits.   Prudential filed a motion for reconsideration, which the trial court dis-

2.   Joseph Tukovits signed and dated this form.

3.   Prudential now submits documentation that reflects that Mr. Tukovits had his insurance policy with Prudential since 1974, and that in 1978 he reduced his UM/UIM coverage from $25/50 to $15/30.  We may not consider this evidence as it was not preserved in the trial court record. Pa.R.A.P. 302, 42 Pa.C.S.A.

4.   Mrs. Tukovits also filed an amended motion for summary judgment.

missed for lack of jurisdiction.[5]  This appeal followed immediately thereafter.

Prudential now raises the following issues:

1.  Did the trial court err in misinterpreting and misapplying 75 Pa.C.S.A. [§§] 1731, 1734 and 1791, such that the insured's elective writing and the renewal and amendment history of consistently lower UM/UIM limits, were deemed to be irrelevant to the validity of the insured's waiver of higher UM/UIM limits?

2.  Did the trial court err in holding that [Prudential] produced insufficient evidence to raise a factual issue of knowing and voluntary waiver of higher UM/UIM limits, where the insured signed a written elective writing and consistently affirmed his chosen limits as evidenced by the policy's subsequent renewal and amendment history?

3.  Did the trial court err in concluding that the insured did not make a knowing and voluntary election of his chosen UM/UIM limits?

Appellant's Brief, at p. 3.

▇▇▇  Our scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. *Schriver v. Mazziotti,* 432 Pa.Super. 276, 278, 638 A.2d 224, 225 (1994), *alloc. den.,* 539 Pa. 638, 650 A.2d 52.  We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact.  *Id.*  We will only reverse the trial court's decision if there was a manifest abuse of discretion.  *Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 98, 644 A.2d 1251, 1254 (1994).  An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."

5.  On March 10, 1995, the trial judge dismissed Prudential's motion for reconsideration as untimely filed and struck it from the record pursuant to Pa.R.A.P. 1701(a).

*Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 447, 625 A.2d 1181, 1185 (1993).

Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. Pa.R.C.P. 1035(b), 42 Pa.C.S.A. The moving party has the burden of proving the non-existence of any genuine issue of fact. *Accu–Weather, Inc.,* 644 A.2d at 1254. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. *Id.* The trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

The MVRFL provides that insurers must offer UM/UIM coverage equal to bodily injury liability coverage except when the insured requests in writing UM/UIM coverage in amounts less than the limits of liability for bodily injury. 75 Pa.C.S.A. §§ 1731 and 1734. If the insurer provides notice pursuant to the form set forth in section 1791, the insured is presumed to have been advised of the benefits and limits available under this chapter. 75 Pa.C.S.A. § 1791. If the insurer's notice does not meet the requirements of section 1791, then the insurer must establish waiver pursuant to the rule set forth in *Johnson v. Concord Mutual Insurance Co.,* 450 Pa. 614, 300 A.2d 61 (1973). *Botsko v. Donegal Mutual Insurance Co.,* 423 Pa.Super. 41, 45, 620 A.2d 30, 32 (1993), *alloc. den.,* 536 Pa. 624, 637 A.2d 284 (1993). In accordance with *Johnson,*

> a waiver of the statutory right to certain levels of uninsured motorists coverage must be "[a]ffirmatively expressed in writing by the insured," which must evidence "[a]n express agreement or acquiescence on the part of the insured to delete or relinquish this protection...." 450 Pa. at 621, 300 A.2d at 65.

*Botsko,* 620 A.2d at 32 (*quoting Byers v. Amerisure Insurance Co.,* 745 F.Supp. 1073, 1076 (E.D.Pa.1990), *affirmed,* 935 F.2d 1280 (3d Cir.1991)).

A two-step analysis is required in determining whether the insured made a knowing and intelligent election in writing for lower UM/UIM coverage. First, in order for the writing to evidence "an express agreement or acquiescence on the part of the insured" to elect an amount of UM/UIM coverage less than the statutory mandate, the insured must have been made aware of the coverage that was available. *Botsko,* 620 A.2d at 33; *Shipe v. Allstate Insurance Co.,* 791 F.Supp. 109, 111 (M.D.Pa.1992); *Byers,* 745 F.Supp. at 1076; *Groff v. Continental Ins. Co.,* 741 F.Supp. 541, 548 (E.D.Pa.1990). Without having been made aware of the coverage that was available, the insured could not knowingly and intelligently waive the coverage mandated by statute. *Botsko,* 620 A.2d at 33.

Second, upon finding initial evidence that the insured was made aware of the coverage available, the trial court may look to events which occurred prior to and after the election in writing for further evidence that the insured acted knowingly and intelligently. *Groff,* 741 F.Supp. at 548; *Shipe,* 791 F.Supp. at 112 (citing *Groff, supra*). For example, such relevant events may include whether the insured previously obtained the same level of UM/UIM coverage, whether the premiums paid reflected the reduced level of UM/UIM coverage, whether the insured ever questioned the level of UM/UIM coverage, whether the insured amended or added vehicles to their policy, and whether the forms that evidenced such transactions reflect the level of UM/UIM coverage. *Groff,* 741 F.Supp. at 548; *Shipe,* 791 F.Supp. at 112 (citing *Groff, supra*).

In addressing Prudential's three issues raised on appeal, we must determine whether the trial court's grant of Mrs. Tukovits' motion for summary judgment constituted an abuse of discretion. For the following reasons, we find it was not.

The trial court held as follows:

Mr. Tukovits' policy was renewed twice a year from 1983 through 1993. During this time period, twenty seven [sic] changes were made to the insurance policy. Nineteen changes were made prior to Mr. Tukovits' death. However, those changes only added and deleted vehicles and added a driver. Tukovits never changed any of the amounts of coverage. In fact, forty three [sic] renewal and amendment notices were sent to the Tukovits's [sic] but the coverage limits were never amended. There is no evidence that Tukovits was informed or that he waived the benefits and limits available or that he understood underinsured motorists insurance.

\*    \*    \*    \*    \*    \*

In the present matter, there is no evidence that Tukovits ever reviewed his policy. Both Mr. Tukovits and the agent who sold the insurance policy have passed away. There is no evidence showing how the policy was sold, if any explanation was made, *Botsko, supra,* and if there was any express agreement or acquiescence to lessen protection. *Byers, supra, Johnson, supra.* The evidence shows only that Mr. Tukovits repeatedly renewed his policy limits by checking a box.

Order and Opinion of February 1, 1995, at pp. 7–9.

The uncontested evidence reflects the following: Prudential did not comply with the particular notice requirements set forth in section 1791 with regard to the 10/9/84 elective writing; thus Prudential had the burden of establishing waiver pursuant to *Johnson, supra;* the express terms of the 10/9/84 elective writing appeared as set forth above; and Mr. Tukovits signed the 10/9/84 elective writing and renewed and amended his policy many times prior to and after 1984.

The record reflects that no genuine issue of material fact remained regarding the evidence submitted. The only issue to be resolved by the trial court was whether the signed elective writing and renewals constituted waiver as a matter of law. The trial court concluded that in the absence of any additional evidence, such as testimonial evidence as to whether

Mr. Tukovits knowingly and intelligently reduced his UM/ UIM coverage, waiver could not be proven. We find that this decision was reasonable in light of the record evidence. Because of the strong public interest involved, deletion or reduction of UM/UIM coverage is determined by stricter than traditional rules of waiver and estoppel. *Botsko*, 620 A.2d at 33.

Prudential argues that the trial court did not properly consider the evidence submitted, particularly, the evidence regarding renewals and amendments. However, considering all of the evidence in the light most favorable to Prudential, we cannot find that that evidence proved waiver as a matter of law. The record reflects that the text of the 10/9/84 elective writing indicated the available statutory coverage. Additionally, the 10/9/84 elective writing offered all available levels of UM/UIM coverage from which to choose, including the statutory level equal to bodily injury coverage and the opportunity to "write in" any level of coverage. The record also reflects that Mr. Tukovits renewed his policy twice a year from 1983 through 1993. Prior to and after the 10/9/84 elective writing, Mr. Tukovits' policy reflected that his UM/UIM coverage was $15/30. Twenty-seven changes were made to the insurance policy during this time, nineteen of which were made prior to Mr. Tukovits' death. Although these changes only pertained to adding and deleting cars and a driver, the record reflects that Mr. Tukovits had his insurance policy physically before him at least twenty-two times between 10/9/84 and his death in 1992. Furthermore, Mr. Tukovits paid premiums that reflected the levels of coverage provided.

Clearly, the evidence above is relevant and does tend to raise an inference that Mr. Tukovits knowingly reduced his UM/UIM coverage when he signed the 10/9/84 elective writing. However, without any additional evidence regarding such issues as whether Mr. Tukovits ever read his insurance policy, ever had it explained to him and ever realized the magnitude of marking and signing the 10/9/84 elective writing, we cannot hold that Prudential produced sufficient evidence to prove waiver as a matter of law.

Prudential additionally argues that Mr. Tukovits' earlier policy constituted a prior selection of lower UM/UIM limits such that section 1734 required Mr. Tukovits to request by writing any desired *increase* in his previously chosen UM/UIM limits.[6] We find that Prudential's argument cannot be supported by a fair reading of the statute. Although it is clear that Prudential issued a policy to Mr. Tukovits prior to 1984 which provided UM/UIM coverage and that Mr. Tukovits renewed the policy without requesting an increase in UM/UIM coverage, the earlier policy was not issued *"under section 1731"* since that section did not come into existence until October 1, 1984. Thus, the 10/9/84 elective writing and renewal was the first time Prudential issued a policy to Mr. Tukovits subject to sections 1731, 1734 and 1791. As such, Prudential was required to provide UM/UIM coverage equal to Mr. Tukovits' bodily injury coverage unless Mr. Tukovits voluntarily and knowingly reduced his UM/UIM coverage in writing as addressed above.

Order affirmed.

BECK, J., files a concurring statement.

BECK, Judge, concurring.

I join the majority opinion. I write simply to emphasize that summary judgment is particularly appropriate in this

6. We note that Mrs. Tukovits argues that Prudential waived this argument pursuant to Pa.R.A.P. 302 because it did not make it during the trial court proceedings. However, although Mrs. Tukovits "correctly asserts that this Court will normally not entertain a theory on appeal that was not presented below, the justification behind this policy is not implicated when a party is in the position of opposing a summary judgment motion." *Kelly by Kelly v. Ickes*, 427 Pa.Super. 542, 548, 629 A.2d 1002, 1005 (1993).

In 1984, section 1734 provided in pertinent part as follows:
   If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him by the same insurer under section 1731, the coverages offered need not be provided in excess of the limits of liability previously issued for uninsured and underinsured motorist coverage unless the named insured requests in writing higher limits of liability for these coverages.
*See* 75 Pa.C.S.A. § 1734, Historical and Statutory Notes.

case because both Mr. Tukovits and his insurance agent, the primary witnesses who could provide "additional evidence regarding such issues as whether Mr. Tukovits ever read his insurance policy, ever had it explained to him and ever realized the magnitude of marking and signing" the elective writing (Majority Opinion at 550–51), have died.