**Thomas FEDEN and Patricia A. Feden, his wife, Appellants,**

v.

**CONSOLIDATED RAIL CORPORATION, a/k/a Conrail, and Monsanto Company, a/k/a Monsanto Chemical Company and General America Transportation Company, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2000.

Filed Feb. 14, 2000.

Eugene J. Reinbold, Pittsburgh, for appellants.

Steven W. Zoffer, Pittsburgh, for appellees.

Before KELLY, JOHNSON, and TAMILIA, JJ.

JOHNSON, J.:

¶ 1 Thomas Feden (Husband) and Patricia A. Feden, his wife, appeal the trial court's order entering summary judgment and dismissing Husband's claim under the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51–60. The Fedens contend that the court erred in concluding that the report of their expert witness was inadmissible to establish causation of Husband's injuries. Initially, the witness's report failed to ascribe general acceptance in the scientific community to the cause of Husband's injuries the witness had diagnosed. Consequently, the court ordered that the case should not be listed for trial until the witness was deposed. We conclude that because the court failed to evaluate the admissibility of the expert's opinion in light of her deposition testimony and because the witness, when deposed, stated that her theory of causation was generally accepted, the trial court erred in entering summary judgment.

¶ 2 The Fedens allege that Husband sustained physical and psychological injuries during the course of his employment as a railroad engineer for defendant Conrail. On August 30, 1986, toxic gases vented from a locomotive tank car into Husband's work area at the Conway Railroad Yard in Beaver County. The Fedens commenced this action in 1988, and in 1998, filed the expert report of Dr. Julia A. Shelton, a psychologist who treated Husband's condition. Though Dr. Shelton's report stated that Husband suffered from, *inter alia*, "post traumatic stress disorder traits," she opined that the psychological and psychiatric community would not necessarily acknowledge post traumatic stress disorder as a valid diagnosis:

[T]he question of etiology is a gargantuan theoretical issue in the field of psychology and psychiatry, and professionals with different theoretical orientations will view it in a myriad of different ways, often diametrically opposed to each other.... As far as I know, there is no well known published literature regarding the relationship between Post Traumatic Stress Syndrome and personality style but some mental health professional[s] postulate such a relationship. In other words, the whole question of etiology is "muddy"!

Letter from Julia A. Shelton, Psy.D., to Eugene J. Reinbold, Esq., 3/3/88, at 3.

¶ 3 Upon review of Shelton's report, the trial court, the Honorable Robert E. Kunselman, determined that the witness's opinion failed to meet the standard for admissibility set forth in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), as adopted by our Supreme Court in *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). Consequently, the court issued the following order:

This case shall not be placed on the active trial list until the plaintiff takes the deposition of Julia A. Shelton, Psy. D.[,] and the defendant determines the propriety of [pursuing] a motion for

summary judgment to litigate the issue as to whether [Shelton's] conclusions meet the *Frye* standard.

Counsel for the parties shall inform the court as to when the deposition has been completed and whether or not a motion for summary judgment will be filed.

Order of Court, 10/6/98. Following entry of the order but prior to completion of Dr. Shelton's deposition, Conrail filed a motion for summary judgment, contending that the opinion Shelton expressed in her report was inadmissible because it was not derived from a "scientific principle or discovery which has been sufficiently established to have gained general acceptance in the particular field to which it belongs." Motion for Summary Judgment, 11/25/98, at 4, ¶ 21.

¶ 4 Thereafter, on December 11, 1998, the Fedens deposed Dr. Shelton. At her deposition, Shelton stated: "There's been a great deal of research particularly over the past ten years in [post traumatic stress disorder].... [I]t continues to be examined and researched by all reputable bodies of psychology and psychiatry." Reproduced Record (R.R.) at 103a. Later, when counsel queried whether the theory of post traumatic stress disorder had attracted widespread support in the psychological community, Dr. Shelton replied, "Yes, it has. I know of no reputable body that quarrels with the diagnosis." *Id.* at 108a. On the issue of causation, Dr. Shelton testified: "I can state at this time with a reasonable degree of psychological certainty that Mr. Feden met then-criteria for post traumatic stress disorder traits and the current criteria for post traumatic stress disorder as a direct result of his toxic exposure in the workplace in August of 1986." *Id.* at 104a.

¶ 5 Counsel delivered a transcription of Dr. Shelton's deposition to Judge Kunselman on March 19, 1999. On May 12, 1999, Judge Kunselman granted Conrail's motion and entered summary judgment. Order of Court, 5/12/99. The Fedens filed this appeal.

¶ 6 The Fedens raise four issues for our review. We note that their Statement of Questions Involved repeats question two, verbatim, in place of question three. The argument the Fedens advance in support of their third issue does not address this question as stated. We conclude accordingly that the Statement of Questions Involved is erroneous, and that a proper statement of question three appears as the argument heading for the third section of the Fedens' brief. To better frame our discussion, we have substituted the proper question three based on the argument heading.

1. DID THE LOWER COURT ERR IN FINDING THAT DR. SHELTON'S REPORT, AS SUPPLEMENTED BY HER DEPOSITION TESTIMONY[,] WAS INSUFFICIENT TO ESTABLISH A CAUSAL RELATIONSHIP BETWEEN THE ACCIDENT AND APPELLANT'S INJURIES?

2. DID THE LOWER COURT ERR IN DIRECTING THAT DR. SHELTON'S DEPOSITION TESTIMONY BE TAKEN TO DETERMINE IF SHE BELIEVED THAT A CAUSAL RELATIONSHIP EXISTED BETWEEN APPELLANT'S ACCIDENT AND APPELLANT'S INJURIES AND THEN FAIL TO CONSIDER THE DEPOSITION TESTIMONY IN GRANTING THE MOTION FOR SUMMARY JUDGEMENT?

3. [DID] THE LOWER COURT [ERR] IN FINDING THAT APPELLEE WAS PREJUDICED BECAUSE THE REPORT OF DR. SHELTON WAS MISLEADING AND APPELLEE WAS NOT ABLE TO PREPARE A REBUTTAL WITNESS WHEN THE CASE WAS NOT SCHEDULED FOR TRIAL AND APPELLEE COULD HAVE AMENDED ITS PRE-TRIAL STATEMENT TO INCLUDE A SUPPLEMENTAL

REPORT DEALING WITH DR. SHELTON'S REPORT ENUNCIATED IN HER DEPOSITION TESTIMONY[?]

4. DID THE LOWER COURT ERR IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGEMENT WHEN THE LOWER COURT CONCEDED THAT DR. SHELTON'S DEPOSITION TESTIMONY WAS LEGALLY SUFFICIENT TO PRESENT AN ISSUE OF CAUSATION TO A JURY?

Brief for Appellant, Thomas Feden (hereinafter Brief for Appellants) at 4, 12 (as to Issue 3).

■ ¶ 7 Our scope of review of a trial court's order granting summary judgment is plenary. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). However, our standard of review is limited, and we will reverse the judgment entered only if we find that the trial court committed an abuse of discretion. In this context, abuse of discretion occurs:

> when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Tukovits v. Prudential Ins. Co. of America*, 448 Pa.Super. 540, 672 A.2d 786, 789 (1996).

¶ 8 In his rule 1925(a) opinion, Judge Kunselman explained that he entered summary judgment because Dr. Shelton's testimony concerning causation went beyond the fair scope of her report. Trial Court Opinion, 6/23/99, at 8. The court reasoned that the substance of Shelton's testimony constituted unfair surprise to Conrail because in her report she had diagnosed only post traumatic stress disorder *traits*, while at her deposition she diagnosed post traumatic stress disorder. *Id.* at 7. The court concluded that Conrail would be preju-

diced by admission of Shelton's testimony because the reports of Conrail's experts failed to address post traumatic stress disorder. *Id.* Judge Kunselman did not consider whether Shelton's deposition testimony complied with *Frye*. *Id.* at 6 n. 1.

■ ¶ 9 The Fedens address the legal basis of the trial court's disposition in their third issue. Because our disposition of that issue obviates the need for us to resolve the remaining issues, we will consider that issue first. The Fedens assert that the trial court erred in concluding that Dr. Shelton's deposition testimony exceeded the scope of her expert report. Brief for Appellant at 12. The Fedens argue that an expert's testimony exceeds the scope of his or her report only if the facts and opinions to which the expert would testify are unknown to the opposing party such as to cause unfair surprise. *Id.* at 13. We agree with the Fedens' assessment of the law and conclude that, in view of the pre-trial status of this case, the trial court erred in determining that Dr. Shelton's deposition testimony was beyond the scope of her report.

¶ 10 The "fair scope rule," upon which the trial court relied in evaluating Shelton's expert report, derives from our Rules of Civil Procedure governing discovery. Rule 4003.5 provides that a party may, during discovery, require his adversary "to state the substance of the facts and opinions to which [his or her] expert is expected to testify and a summary of the grounds for each opinion." Pa.R.C.P. 4003.5(a)(1)(b). The purpose of this provision is "to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony." *Tiburzio–Kelly v. Montgomery*, 452 Pa.Super. 158, 681 A.2d 757, 764 (1996) (citation omitted). "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings, ... the direct testimony of the expert may not be inconsistent with or go beyond the fair

scope of his or her testimony in the discovery proceedings." Pa.R.C.P. 4003.5(c).

¶ 11 "[I]n determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Tiburzio–Kelly*, 681 A.2d at 765 (citations omitted).

> In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." *The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from making a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.*

*Chanthavong v. Tran*, 452 Pa.Super. 378, 682 A.2d 334, 340 (1996) (citations omitted).

¶ 12 Upon review of the record before us, we conclude that the discrepancy between Dr. Shelton's report and her subsequent testimony was not of a nature which would prevent Conrail from making a meaningful response, or which would mislead Conrail as to the nature of the appropriate response. *See id.* In her initial report, rendered in 1988, Dr. Shelton opined that Husband suffered from "post traumatic stress disorder traits." In her subsequent deposition, in 1998, she attested that he suffered from "post traumatic stress disorder." Notwithstanding the extent to which these diagnoses *may* differ in scientific parlance, the theory underlying post traumatic stress disorder is the central aspect of both. Clearly, the first diagnosis suggests and puts the second diagnosis at issue. Accordingly, we fail to discern how Shelton's attribution, in her first diagnosis, of "traits" of the disorder could misdirect Conrail such that its experts would not understand the need to address and refute a claim of post traumatic stress disorder itself. Whether the witness described Husband's ailment as a "disorder," or as "traits" she recognized to be part of that disorder, is of no moment for purposes of Rule 4003.5. So long as the theory to which both diagnoses relate was disclosed in the original report, no further elucidation is necessary. *Cf. Martin v. Johns–Manville Corp.*, 322 Pa.Super. 348, 469 A.2d 655, 659 (1983) (concluding that expert report stating that plaintiff had asbestosis and that witness could not "exclude possibility of bronchogenic carcinoma" was adequate to place defendants on notice that plaintiff might advance theory that his exposure to asbestos had increased his risk of contracting bronchogenic carcinoma). Because Dr. Shelton disclosed, in her initial report, the pivotal theory underlying both diagnoses, we find no basis upon which Conrail can claim, or the trial court could find, that her deposition testimony was beyond the fair scope of her report.

¶ 13 Moreover, Conrail fails to posit any serious argument to establish that it was *in fact* surprised or prejudiced by the content of Dr. Shelton's deposition and could not produce a rebuttal witness. Though Conrail argues that Shelton's opinion that Husband suffered from post traumatic stress *disorder* constituted a new diagnosis, Brief for Appellee at 14, Conrail fails to explain precisely how that diagnosis differed from the one in Shelton's report. Similarly, Conrail fails to explain why the theory underlying the diagnosis of post traumatic stress disorder *traits*, as it appeared in the report, is not equally applicable to post traumatic stress *disorder*. Additionally, Conrail fails to explain why it could not obtain expert testimony of its own to rebut Dr. Shelton's testimony. In accordance with the trial court's order, this case could not be scheduled for trial until the issue of the sufficiency of Dr. Shelton's opinion had been resolved. Under these circumstances, we fail to discern any impediment to Conrail's retention of a new

expert or supplementation of its existing expert opinions. Accordingly, we conclude that the trial court erred in finding that Conrail would be prejudiced if the Fedens were allowed to supplement Dr. Shelton's report with her deposition testimony.

¶ 14 We have concluded that Dr. Shelton's deposition testimony was within the fair scope of her original report and that Conrail failed to demonstrate potential prejudice should the content of the deposition be admitted to supplement the report. We conclude accordingly that the court erred in granting summary judgment on the basis of the fair scope rule.

¶ 15 The Fedens ask us to conclude as well that the court erred in failing to find that Dr. Shelton's report, as supplemented by her deposition testimony, complied with the *Frye* standard for admissibility. Brief for Appellants, STATEMENT OF QUESTIONS INVOLVED, at 4 ¶ 1. However, as we have discussed, the court entered summary judgment solely on the basis of the fair scope rule and did not reach the question of whether Shelton's deposition comported with *Frye*. Consequently, this issue is not ripe for our review and we find no occasion to address it. *See St. Clair Mem. Hosp. v. Department of Health*, 691 A.2d 1040, 1042 (Pa.Cmwlth.1997) ("[A]ppellate courts require that an actual controversy exist at all stages of review."); *Brown v. Commonwealth Liquor Control Bd.*, 673 A.2d 21, 23 (Pa.Cmwlth.1996) (reasoning that even though issue may arise in future it is not subject to appellate review if not currently in controversy).

¶ 16 Additionally, the Fedens invite us to determine that the court abused its discretion in entertaining a motion for summary judgment prior to the completion of Dr. Shelton's deposition when the court had effectively directed that the deposition be taken. Brief for Appellants, STATEMENT OF QUESTIONS INVOLVED, at 4 ¶¶ 2, 4. We find no occasion to consider this issue because it was not germane to the court's disposition of Conrail's summary judgment motion. Regardless of when the Fedens ac-

tually conducted Dr. Shelton's deposition, the witness's testimony had been transcribed and provided to the court almost two months before entry of the order granting summary judgment. The court's rule 1925(a) opinion reflects the court's thorough familiarity with Dr. Shelton's testimony as well as the court's observation that had it addressed the issue of whether the testimony complied with *Frye*, it would be "inclined to admit it." Trial Court Opinion, 6/23/99, at 6 n. 1. Consequently, we conclude that the timeframe within which the court accepted, considered, and ruled on the motion for summary judgment had no bearing on the order from which the Fedens took this appeal. Accordingly, we need not consider whether the trial court abused its discretion by considering Conrail's motion for summary judgment prior to completion of Dr. Shelton's deposition. *See Appeal of Mesta Machine Co.*, 347 Pa. 191, 32 A.2d 236, 241 (1943), *rev'd on other grounds, United States v. Allegheny Co.*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944) (reasoning that where it appeared from disposition of case on appeal that appellant was not harmed by trial court's action, reviewing court need not pass on question of whether trial court erred).

¶ 17 For the foregoing reasons, we reverse the order granting summary judgment and remand this matter to the trial court to determine whether Dr. Shelton's report, as supplemented by her deposition testimony, comported with the measure of admissibility in *Frye*.

¶ 18 Order **REVERSED**. Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED**.