**Schweikert v. Saint Luke's Hospital
of Bethlehem, Pa.**

450

C.P. of Lehigh County, no. 2001-C-0096V, consolidated with no. 2002-C-107V.

*John J. Speicher,* for plaintiffs.
*Paul F. Laughlin,* for defendant St. Luke's Hosp.

WALLITSCH, *J.,* November 8, 2004—There are two issues in this motion for post-trial relief filed by plaintiffs. First, plaintiffs claim that the trial judge erred in striking the proffered testimony of plaintiffs' expert because his testimony went beyond the "four corners" of his expert report and because the theory of liability of the testimony was not disclosed in plaintiffs' complaint. The second issue is whether the trial judge erred in overruling plaintiffs' counsel's objection to a portion of defense attorney's closing argument. For the reasons set forth herein, we find no merit in either of plaintiffs' arguments.

On March 20, 2001, plaintiffs[1] filed a complaint against Saint Luke's Hospital of Bethlehem, Pennsylvania, t/a/d/b/a St. Luke's Hospital—Allentown Campus

---

1. Since plaintiff Dennis R. Schweikert's claims are merely derivative of his wife's claims, I will hereinafter refer to Pati Ann Schweikert as "plaintiff."

and St. Luke's Health Services Inc. (hospital), her surgeon, Matthew L. Montgomery MD, and Dr. Montgomery's private medical practice, Toselli & Brusko Surgical Associates Ltd. Subsequently, plaintiff filed an additional lawsuit claiming that Visiting Nurses of Lehigh Valley Inc., through its employees, was also professionally negligent. This corporation is not affiliated with the hospital, nor with Dr. Montgomery or his group. These two actions were consolidated for purposes of discovery and trial but, prior to trial, Visiting Nurses and Dr. Montgomery, along with his medical group, settled their actions with plaintiff. The trial against the hospital alone began on July 12, 2004. On July 14, 2004, the jury returned a defense verdict, to which plaintiff filed timely post-trial motions.

The relevant facts underlying these actions are as follows. On January 10, 1999, plaintiff admitted herself to the emergency room of the hospital, complaining of severe abdominal pain and vomiting. She was diagnosed with a life-threatening condition, acute calculous cholecystitis and necrotizing pancreatitis. On that date, Dr. Montgomery performed an open abdominal surgery for this condition and, two days later on January 12, 1999, performed a second surgery. In both procedures, after the closure of the fascia, the external portion of the wound had to be left open but fully packed with dressing material so that it could heal from the inside out. Plaintiff remained at the hospital until January 27, 1999, when she was discharged. Upon discharge from the hospital, Visiting Nurses visited plaintiff in her home on a daily basis in order to cleanse the wound and replace the dressings. On March 12, 1999, she underwent another operative procedure at

the hospital for the removal of her peritoneal dialysis catheter and the removal of an abdominal drain.

In the following year, plaintiff began to exhibit certain symptoms which led to a further surgical procedure on February 2, 2000, when a small piece of sponge was removed from the subcutaneous area. Plaintiff claimed that one or more of these defendants was responsible for leaving that sponge in her body which, she claimed, caused her injury.

After Visiting Nurses and Dr. Montgomery settled with plaintiff, the trial date in this matter was established. On July 6, 2004, in preparation for trial, plaintiff took the videotape deposition of Dr. Eric Munoz. Dr. Munoz had previously prepared two expert reports, one dated April 29, 2002, and one dated April 19, 2004. In his April 2002 report, he stated:

"(1) What are the various scenarios for the sponge material to have been left inside of Mrs. Pati Ann Schweikert?

"Although it is difficult to state exactly when the material (*i.e.,* sponge) was left inside the patient's abdomen cavity, this most likely occurred during the surgical operations (procedures) in January and March of 1999.

"It is also possible that during the wound care of her infected abdominal wound during 1999 by the Visiting Nurses, foreign material (*i.e.,* sponges) could have been pushed into the abdominal wound and/or cavity by the Visiting Nurses."

In his April of 2004 report, Dr. Munoz merely discussed the hospital's "perioperative" policies regarding sponge counts.

However, when Dr. Munoz appeared for his trial deposition, he attempted to testify that "[m]y opinion is that either during the surgical procedures of January 10 or January 12, 1999, *or during her period in the hospital from January 10, 1999 'til January 27, 1999,* or while she was being treated by the Visiting Nurses during 1999, that sometime during that period or during that, you know, initial period, something was either left inside her abdominal cavity or inside her wound that caused this problem." (emphasis added) Counsel for the hospital objected to the testimony emphasized above and I agreed with the defense that Dr. Munoz was attempting to add a third theory of liability that had not been disclosed in plaintiff's complaint or expert reports. Therefore, I precluded his testimony from being offered at trial.

First of all, Dr. Munoz' proffered trial testimony identified three distinct scenarios as to when the sponge that was later found was left in plaintiff's abdomen: (1) The sponge was left by the surgical staff during the plaintiff's surgeries of January 10 or January 12, 1999; or (2) the sponge was left by the hospital's nursing staff while they cared for plaintiff after her surgeries but before her discharge from the hospital; or (3) the sponge was left by the Visiting Nurses who cared for plaintiff in her home after she was discharged from the hospital. However, plaintiff's pleadings and expert reports had identified only scenarios (1) and (3). The claim that the hospital's nurses left the sponge during the plaintiff's postoperative treatment in the hospital was never disclosed in plaintiff's pleadings or expert reports.

The law in Pennsylvania is clear, since the pleadings define the scope of the relief available to a plaintiff, a

material variance between the allegations in the complaint and the theory offered at trial will result in the preclusion of the new theory. *Reynolds v. Thomas Jefferson University Hospital,* 450 Pa. Super. 327, 676 A.2d 1205 (1996), *appeal denied,* 549 Pa. 703, 700 A.2d 442 (1997). Plaintiff's complaints in the two consolidated actions clearly and repeatedly assert that the sponge in question was left in plaintiff's abdomen either during the surgeries in January or March, 1999, or during the post-discharge care provided by Visiting Nurses. In her complaint against the hospital and Dr. Montgomery, plaintiff asserted the following:

"(45) Defendant, Dr. Montgomery, was negligent in his care and treatment of Pati Ann Schweikert, which negligence includes the following:

"(a) In causing and/or allowing a sponge and/or tantalum clip to be left in Pati Ann Schweikert *while performing a surgical procedure* on her on either January 10 or 10 [sic] and/or March 12, 1999;

"(b) In failing to recognize the immediate danger presented to plaintiff, Pati Ann Schweikert, by leaving a surgical sponge and/or tantalum clip inside of her *during a surgical procedure;*

"(c) In failing to properly treat Pati Ann Schweikert *during the surgeries* by failing to recognize that a sponge and/or tantalum clip were left in her abdominal cavity; . . .

"(59) Defendant, St. Luke's is liable for the losses of the plaintiff, Pati Ann Schweikert, as hereinabove set forth as a direct and proximate result of the negligence of Dr. Montgomery and the staff and agents of Toselli & Brusko Surgical Associates Ltd., as herein set forth to-

gether with its own negligence through the conduct of its staff, agents and employees, which negligence includes the following:

"(a) In failing to do a proper count for surgical sponges and tantalum clips *at the close of the surgical procedures* performed on Pati Ann Schweikert on January 10, 1999 and/or January 12, 1999, and/or March 12, 1999;

"(b) In failing to recognize that a sponge and/or tantalum clip was left in the abdominal cavity of Pati Ann Schweikert *at the close of one or more of the surgical procedures* as hereinabove set forth;

"(c) In failing to recognize that the symptoms that Pati Ann Schweikert continued to exhibit post-surgically after January 10, 1999, was consistent with a serious and growing infection which may have been caused, in whole or in part, by the presence of foreign bodies including the *surgical* sponge and/or tantalum clip;

"(d) In failing to properly supervise its physicians, nurses, technicians, and other staff present *at the surgical procedures* to prevent them from leaving a surgical sponge and/or tantalum clip inside Pati Ann Schweikert's abdominal cavity;

"(e) In failing to warn defendant, Dr. Montgomery, of the fact that a *surgical* sponge and/or tantalum clip were left inside plaintiff's abdominal cavity *during one or more of the surgical procedures* performed in January and March of 1999;

"(f) In negligently reporting that a correct sponge and/or tantalum clip count had been performed *during the January 10, 1999 surgical procedure;*

"(g) In failing to properly diagnose and treat the abdominal infection of Pati Ann Schweikert following the

January 10, 1999 surgical procedure and continuing thereafter." (emphasis added)

It is clear that plaintiff's complaint against the hospital claimed only that the sponge was a "surgical sponge," that it had been left "during one or more of the surgical procedures" and that the hospital staff failed to diagnose and treat the infection that resulted when the sponge was left in during surgery. Nowhere does the complaint claim in any fashion that a dressing sponge was left in plaintiff's abdomen by hospital nurses during the care which followed the surgeries. While the complaint referred to the obligation to count sponges, this allegation related solely to counting sponges during surgery and never disclosed the claim that hospital nurses performing the postoperative hospital care left a dressing sponge (a different kind of sponge) in plaintiff's body.

Plaintiff's complaint against Visiting Nurses asserted the second scenario as to when the sponge was left in plaintiff's abdomen, *i.e.,* when they treated plaintiff's surgical wound after her discharge from the hospital on January 27, 1999. The only dressing sponge ever mentioned in either complaint was the dressing sponge allegedly left by the Visiting Nurses.

It was not until the trial deposition of Dr. Munoz that the plaintiff's theory suddenly changed to include the claim that the sponge may have been left during a postoperative period before plaintiff's discharge from the hospital. It was clear to the undersigned that this was a disingenuous attempt to change the theory of liability due to the fact that plaintiff had settled with Dr. Montgomery and the Visiting Nurses, who were the primary targets of her original theories of liability. Plaintiff's

counsel, in his brief in post-trial motions, argues that I should have exercised my discretion and permitted plaintiff to "clarify" her complaint consistent with Dr. Munoz' new theory of liability. However, this is not a clarification; it is an added factual allegation, and an added change in theory, asserting a different kind of negligence than the ones previously raised. Plaintiff attempted to interject a new cause of action a week before trial began and after the statute of limitations on such new cause of action had run. Dr. Munoz' new theory targeted different parties (the surgical staff versus the postoperative nursing staff), based his claim on different conduct (counting surgical sponges versus postoperative wound treatment), and involved different time periods (January 10, 1999, January 12, 1999, and March 12, 1999, versus the period of January 12 through 27, 1999).

Plaintiff contends that subparagraph g. of paragraph 59 of the complaint against the hospital put the hospital on sufficient notice as to the possible claim that its employees acted negligently in the postoperative period. However, that subparagraph refers to diagnosis and treatment of an infection and its only plausible interpretation is that this infection was caused by the sponge left in plaintiff during surgery which is what the preceding six subparagraphs refer to.

Secondly, Dr. Munoz' two expert reports never disclosed a claim that the sponge later found in plaintiff's abdomen was left by the hospital's nurses during postoperative care. Dr. Munoz' reports merely asserted the two scenarios that had been pled in plaintiff's complaints against the hospital and Visiting Nurses. In his first report, Dr. Munoz specifically mentioned the surgical operations and the care by the Visiting Nurses. The supple-

mental report did nothing more than to discuss the hospital's "perioperative policies" regarding sponge counts and opined that the hospital surgical staff had violated those policies by leaving a sponge in plaintiff's abdomen. Therefore, it is clear that this new theory that the sponge may have been left by the hospital's nurses during the postoperative period is outside the scope of the four corners of the reports.

Pennsylvania Rule of Civil Procedure 4003.5(a)(1)(b) requires that a party receiving interrogatories must not only identify her expert, but she also must disclose "[T]he substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." The Pennsylvania Superior Court in *Feden v. Consolidated Rail Corp.*, 746 A.2d 1158 (2000 Pa. Super. 40), gives guidance with regard to the "fair scope of the report" issues. As the Superior Court stated, "[t]he purpose of this provision is 'to avoid unfair surprise by enabling the adversary to prepare a response to expert testimony.' " *Id.* at 1161. Essentially, we are to ask whether the discrepancy between the expert's pretrial report and his trial (here, videotaped) testimony is of a nature which would prevent the adversary from making a meaningful response or which would mislead the adversary as to the nature of the appropriate response. It is clear that the defense was misled until Dr. Munoz' deposition as to one of the theories of the plaintiff. Nowhere was there any mention, either in pleadings or in Dr. Munoz' two reports, that there was a claim that other nurses, not those in the operating room or the Visiting Nurses, were at fault for leaving a sponge in plaintiff's abdomen. To have permitted Dr. Munoz to give this new theory to a jury would fly in the face of both the pleading requirements and the expert

report requirements of our Pennsylvania Rules of Civil Procedure. Accordingly, plaintiff's post-trial motion on this issue is without any merit.

Plaintiff also claims that a new trial is required because of statements made by defense counsel in closing argument. The hospital's attorney analogized this case to a case where a fireman saved a trapped woman from a fire, damaged a door in the process, and then was sued. An objection was made by plaintiff's counsel that this was "hypothetical about a woman who is suing a fireman" and that it had nothing to do with this case. However, although it is hypothetical, it did have something to do with this case. Plaintiff presented at the hospital with acute necrotizing pancreatitis, a deadly condition. All witnesses, including plaintiff's expert, agreed that the surgical procedures performed by Dr. Montgomery and the hospital staff saved plaintiff's life. The analogy, therefore, had a reasonable relationship to the case at hand and was not improper.

Plaintiff also claims that defense counsel improperly raised a similar argument at the conclusion of his closing argument when he stated that "Mrs. Schweikert was brought back by superb care at St. Luke's Hospital." There was no objection needed to this comment and it was proper in any event.

### ORDER

And now, November 8, 2004, upon consideration of the post-trial motions filed by plaintiffs, and after argument thereon, said motion for post-trial relief is hereby denied.